**Carl L. BERRY, Jr., Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 49–71–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

April 7, 1972.

William B. Cummings, Arlington, Va., for plaintiff.

Adelard L. Brault, Fairfax, Va., for defendant.

## MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

Plaintiff was injured in an automobile accident on November 17, 1968, in Prince William County, Virginia, when a vehicle operated by Carolyn R. Robb negligently struck the car operated by plaintiff. As a result of litigation in the Circuit Court of Prince William County, plaintiff recovered a judgment against Carolyn R. Robb in the sum of $84,547.50.[1] The Robb vehicle was apparently insured with maximum coverage of $25,000 which has been paid by an insurer who is not a party to this action.

The defendant insurance company issued a policy to John L. Whisnant with maximum coverage of $15,000. Plaintiff, by an assignment executed by Carolyn R. Robb, is attempting to collect the maximum coverage allegedly afforded by this policy, plaintiff having waived whatever rights he may have to recover the total amount of the excess verdict rendered in his favor against Carolyn R. Robb. Thus, for the purposes of this action, plaintiff is in the same position as Carolyn R. Robb would be if she had filed her action against the defendant.

The principal issue in this case pertains to the construction of the term "non-owned automobile" which, as stated in the policy means "an automobile or trailer not owned or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." Specifically, the question centers around the words "furnished for the regular use." It is conceded that the Whisnant automobile was

---

1. There were additional defendants. As to the Chrysler Corporation, the state court struck the plaintiff's evidence. The jury returned a verdict in favor of the other defendant, Woodbridge Chrysler-Plymouth Corporations. Judgments in favor of these defendants were accordingly entered. We are not concerned with these rulings.

not involved in the accident; nor was it ever driven by Carolyn R. Robb.

There is no material dispute as to the evidence. Carolyn R. Robb is the daughter of John L. Whisnant and wife. In due time she married David Robb and after a period of time, David purchased a Plymouth automobile, placing the title to the same in the name of his father, William A. Sayers, because of financing problems due to David's age. It is undisputed, however, that David was the owner of the vehicle and made all payments under the financing arrangements. After David left to enter the military service, his wife physically made the payments from funds provided by David. Until David entered the military service, the vehicle remained in his possession at the home of David and Carolyn.

On or about April 17, 1968, David joined the Armed Forces and Carolyn went to live with her parents, Mr. and Mrs. Whisnant. David left his automobile at the home of his parents, Mr. and Mrs. Sayers, as Carolyn had not learned to drive. In due time David arrived at Fort Benning, Georgia, for his basic training. Mrs. Sayers testified that she occasionally operated David's car, principally to keep the battery properly charged.

During the latter part of September or early October, David returned home on a 15-day leave. He arranged for Carolyn to obtain a driver's permit. Even before Carolyn obtained her permit, Mrs. Sayers had given Carolyn driver's lessons and, on some occasions, Carolyn had driven David's car when accompanied by her mother-in-law. Indeed, during June on a trip to Georgia, Carolyn had driven David's car during a portion of the trip and, of course, was accompanied by an adult who was a licensed driver. During David's 15-day leave, he gave Carolyn additional driver's lessons.

David was sent to Viet Nam in October, the exact date not being revealed by the record. At that time David took the vehicle to the Whisnant home where Carolyn was to reside while David was overseas. Carolyn testified that David wanted her to drive but not until she felt confident in using the car. In addition to her driving operations described above, Carolyn had operated the vehicle alone on at least three occasions around the trailer park where vehicular traffic was essentially nil.

At all times after the automobile had been taken to the Whisnant home and David had left after his 15-day leave, Carolyn had possession of the keys to the vehicle. She admitted that she was not required to ask permission to drive the car. On October 31, 1968, accompanied by Mrs. Whisnant, Carolyn obtained her operator's license. Between that date and the day of the accident on November 17, she operated the vehicle on three occasions. Carolyn obtained employment about one week prior to the accident but did not use David's car as she rode as a passenger with a Mrs. Beaman.

Carolyn asserts that no one, except David, ever advised her not to drive the automobile. As to David, his only alleged limitation was that Carolyn should not drive unless accompanied by an adult licensed driver but, as noted above, that he wanted her to drive when she had attained some confidence in operation. While it is believed that David's first limitation was imposed prior to October 31, 1968, when she obtained an operator's license, and the latter limitation was imposed thereafter, we deem the point to be immaterial.

Plaintiff relies, mainly, on dicta in Quesenberry v. Nichols, 208 Va. 667, 159 S.E.2d 636 (1968). While this case did interpret the definition of a "non-owned automobile" under somewhat different wording as contained in defendant's policy, the precise point at issue in the present case not involved. In *Quesenberry*, the Virginia Supreme Court cited with approval the "leading" case of Aler v. Travelers Indemnity Co., 92 F.Supp.

620 (D.Md.1950), in which the insured was driving his mother-in-law's Plymouth automobile at the time of the accident when his mother-in-law had been a member of the insured's household but was ill and confined to her bed. The insured, his wife and son, had been using both cars when needed. The court held that the exclusionary clause was not ambiguous and excepted from coverage the use of any other automobile (1) owned by the insured or a member of his household or (2) furnished for regular use to the insured or a member of his household.

Plaintiff, while admitting that Carolyn occasionally used David's Plymouth, contends that it was not "furnished for the regular use" of Carolyn. Assuming arguendo that Carolyn did not *regularly* use David's car—a point which need not be decided—we think that this evades the question. The point is that the car was "furnished" for the regular use of Carolyn. The criteria for any determination of the applicability of this language is set forth in Farm Bureau Mutual Automobile Ins. Co. v. Marr, 128 F. Supp. 67 (D.N.J.1955). Even if we should find that Carolyn only infrequently made use of the vehicle this fact, standing alone, is insufficient to defeat the exclusionary clause of the policy issued to Whisnant.

The authorities relied upon by the defendant are apposite. In Campbell v. Aetna Casualty and Surety Co., 211 F.2d 732 (4 Cir., 1954), the late Judge Soper quotes at length, with approval, from Aler v. Travelers Indemnity Co., supra, which states that no coverage is afforded with respect to the use of another automobile "which he frequently uses *or has the opportunity to do so.*" Again in Cotton States Mutual Insurance Company v. Falls, 114 Ga.App. 812, 152 S.E.2d 811 (1966), the court pointed out in discussing the language "furnished for regular use":

"Obviously the exclusion in the contract of insurance clearly is based upon the purpose for which the automobile is furnished rather than on the quantum of use."

Even more in point is Allstate Insurance Co. v. Government Employees Ins. Co., 263 A.2d 78 (Me.1970), which contains an exhaustive discussion of the subject matter.

Thus it follows that we are not concerned with the quantum of use. The question is whether the vehicle is actually or potentially used. With David in Viet Nam the automobile was entrusted to Carolyn. She alone had the keys. She alone could give permission to use the vehicle. She alone made the determination as to when David's car would be put in operation, and by whom. Admittedly she actually used the vehicle infrequently but this is not the test to be applied to this set of facts. Manifestly there was no coverage afforded by defendant's policy.

Finally, plaintiff relies upon the provisions of § 38.1–389.1 of the Code of Virginia 1950, as amended, which requires an insurer to notify the claimant or claimant's counsel of record of the insurer's intention to rely upon any *breach* of the terms and conditions of the insurance contract within 20 days after discovery of the *breach* and, if not so notified, there is a waiver of the defense.

It should be sufficient to state that this statute has no application to a non-coverage situation. There was no *breach* of the insurance contract by the insured; the insured being Whisnant as applied to these facts. Carolyn and David were not insured by defendant's policy.

A judgment order will be entered in favor of the defendant upon presentation, following endorsement by counsel for plaintiff. Taxable costs are assessed against the plaintiff.