## CIRCUIT COURT OF FAIRFAX COUNTY

Aetna Casualty & Surety Co.

v.

Compass & Anchor Club, Inc., et al.

February 24, 1994

Case No. (Law) 123500

By Judge Arthur B. Vieregg, Jr.

This case came before the Court for oral argument on January 14, 1994, as to the summary judgment motion of the defendants, Matthew and Patricia McCormack. The Court has reviewed the briefs filed by counsel, has considered the arguments made on behalf of the parties, and is now prepared to rule on the McCormacks' summary judgment motion.

### I. *Background and Facts of the Case*

This action was initiated by the Aetna Casualty & Surety Company to obtain a declaration that it has no duty to defend or indemnify its insureds with respect to potential liability arising out of an accident occurring on October 8, 1987. On that date a minor child, Brian McCormack, fell through a second story balcony railing on the premises of Aetna's insureds, Compass & Anchor Club and the Good Samaritan Council of the Knights of Columbus (the "Insureds"). The McCormack child sustained serious brain injuries. For purposes of this motion, Aetna conceded that an Aetna policy afforded the Insureds liability coverage for such an accident.

At oral argument, counsel for Aetna stipulated that the accident fell within the scope of the policy's coverage.

For a period of almost five years following the accident, the Insureds failed to notify Aetna of its occurrence. On September 9, 1992, however, the Insureds' insurance agent belatedly notified Aetna of the accident. On October 29, 1992, Aetna notified its Insureds that Aetna:

would be instituting a declaratory judgment action seeking a ruling which will determine whether Aetna owes a duty to defend or indemnify [the claimants'] action due to a breach of a notice condition.

Aetna Mem. at 3.

On December 17, 1992, Aetna forwarded a letter to its Insureds further notifying them that Aetna was denying coverage because of the Insureds' breach of the notice provisions of their liability policy. On January 25, 1993, Aetna filed a declaratory judgment action in the United States District Court for the Eastern District of Virginia seeking a judicial determination that it was not obligated to defend or indemnify its Insureds with respect to the accident. Its Insureds and Brian McCormack and his mother ("the McCormacks") were made party defendants to this action. Aetna furnished no notice to the McCormacks or their attorneys of its decision to deny coverage to its Insureds until after it had filed that action. That action was apparently discontinued without a judgment, and Aetna filed this action seeking the same declaratory relief in April 1993.

## II. *The McCormacks' Summary Judgment Motion*

The McCormacks' motion for summary judgment is based upon the undisputed facts which are summarized above. In their summary judgment motion, the McCormacks contend, pursuant to Va. Code Ann., § 38.2–2226 (1990), that Aetna had a statutory duty to notify the McCormacks of its decision to deny liability coverage to the Insureds within twenty days of making that decision, that is, no later than January 6, 1993. Since Aetna did not afford that notice to them, the McCormacks further contend that Aetna is now precluded from denying coverage under its liability policy with the Insureds, because it did not timely notify them of that decision.

Although not explicitly addressed, the Court understands the McCormacks' position to be that, in the event they obtain a judgment against the Insureds, Aetna must pay that judgment to the extent of the policy limits without prejudice to Aetna's rights to recover a judgment against its Insureds for any amounts paid to the McCormacks. The McCormacks' summary judgment motion does not dispose of all of the relief sought by Aetna. Aetna also has sought declaratory relief with respect to its rights *vis-a-vis* its Insureds.

The McCormacks request additional affirmative relief which may not be granted since the relief which this Court can afford is dependent upon the motion for judgment filed by Aetna. The McCormacks have not filed a counterclaim for declaratory relief.

III. *Sections 38.1–389.1 and 38.2–2226 of the Code of Va.*

Before addressing Aetna's opposition to the McCormacks' motion, it is useful to review both the history and provisions of § 38.2–2226 and its predecessor statute, § 38.1–389.1 of the Code of Virginia. Section 38.1–389.1 was in effect until July 1, 1986, and provided as follows:

> § 38.1–389.1. *Insurer to give notice to claimant of intention to rely on certain defenses and of execution of nonwaiver agreement.* — Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured and such insurer intends to rely on such breach in defense of liability for any claim within the terms of such policy, such insurer shall notify the claimant or the claimant's counsel of record of its intention to rely on such defense within twenty days after discovery by the insurer or any of its agents of the breach or of the claim, whichever is later. Whenever a nonwaiver of rights or similar agreement is executed by the insurer and the insured, notice thereof shall be given to the claimant or the claimant's counsel within ten days after such agreement is executed. Failure to serve such notice within such time will result in a waiver of such defense to the extent of such claim by operation of law.

This section required a liability insurer to provide notices to a claimant against its insureds in two circumstances. In the first sentence, the General Assembly required a liability insurer to notify a claimant (or the claimant's counsel) within twenty days of the insurer's decision to deny coverage to its insured ("Denial of Coverage Notice").[1] In the second sentence, the General Assembly required a liability insurer to notify a claimant (or its counsel) within ten days of the insurer's agreement with its insured by which the insurer reserved the future right to deny coverage ("Reservation of Rights Notice").

---

[1] It is Aetna's failure to give this notice under § 38.2–2226 that is the basis for the McCormacks' summary judgment motion.

In the last sentence of § 38.1–389.1, the General Assembly provided that, if "such notice" was not given by the liability insurer to the claimant, a waiver of the insurer's defenses would arise as a matter of law. Although it is not altogether clear whether either or both of the § 38.1–389.1 Notices constituted the antecedent of the statutory language, "such notice," every Virginia court considering § 38.1–389.1 interpreted "such notice" to comprehend the Denial of Coverage Notice (and arguably, by implication, the Reservation of Rights Notice as well). Each of these decisions assumed that a liability insurer's failure to provide either notice gave rise to a waiver by the insurer of its policy defenses. *Federal Ins. Co. v. Nationwide Mut. Ins. Co.*, 448 F. Supp. 723, 725–26 (W.D. Va. 1978); *Berry v. State Farm Ins.*, 340 F. Supp. 228, 231 (W.D. Va. 1972) (*dicta*); and *Liberty Mut. Ins. Co. v. Safeco Ins.*, 223 Va. 317, 326 (1982) (*dicta*).

In 1986, based upon a report of the Virginia Code Commission, the General Assembly revised certain statutes in Title 38.1 of the Code of Virginia ("Insurance"), and it recodified the entire title, as revised, as Title 38.2. In the process, the General Assembly modified the language in § 38.1–389.1 and recodified it as § 38.2–2226. *See* Va. Code Ann. § 38.2–100, Editor's Note (Michie 1990).

In adopting § 38.2–2226, the General Assembly again required liability insurers to give claimants (or their counsel) the twenty day Denial of Coverage Notice after an insurer denied coverage to its insured. Likewise, it again required such insurers to furnish claimants (or their counsel) the ten day Reservation of Rights Notice after the insurer reached a reservation of rights agreement with its insured.

Importantly, the General Assembly changed the last sentence of § 38.2–2226 to provide that "[f]ailure to give the notice within ten days" gave rise to a waiver of the liability insurer's policy defenses by operation of law. As will be discussed, Aetna contends that the purpose of this statutory change was to require a waiver of a liability insurer's policy defenses (i) only if it failed to provide a claimant with the ten day Reservation of Rights Notice; but (ii) *not* in the event that the insurer neglected to furnish the claimant the twenty day Denial of Coverage Notice.

The McCormacks concede that the waiver language in the last sentence of § 38.2–2226 may be read to refer only to the Reservation of Rights Notice. In response to Aetna's argument that no waiver arises from an insurer's failure to provide a claimant with a Denial of Cov-

erage Notice, they argue that the waiver provision of § 38.1–389.1 never expressly applied to the Denial of Coverage Notice. They further contend that the *Federal Ins. Co.*, *Berry*, and *Liberty Mut.* decisions all stand for the proposition that an implied waiver arises for an insurer's failure timely to provide a claimant with the Denial of Coverage Notice. McCormack Mem. at 3–4. This Court rejects that argument. This Court is persuaded that each of these courts declared that the insurer's failure to give a claimant a Denial of Coverage Waiver gave rise to a waiver of policy defenses based upon the express language in the last sentence of the statute. *Federal Ins. Co.*, 448 F. Supp. at 725–26; *Berry*, 340 F. Supp. at 231; *Liberty Mut. Ins.*, 223 Va. at 325–26.

### IV. *Aetna's Opposition to the McCormacks' Summary Judgment Motion*

Aetna opposes the McCormacks' summary judgment motion on four grounds.

### A. *§ 38.2–2226 Is Limited to Auto Liability Insurers.*

Aetna first argues that the operation of § 38.2–2226 is confined to automobile liability insurers. This contention is neither supported by the plain language of the statute, *see Lee-Warren v. School Bd.*, 241 Va. 442, 445 (1991), nor by the cases cited by Aetna.

Aetna emphasizes that several cases applying the statute each involved auto liability policies. *See Gordon v. Liberty Mut. Ins. Co.*, 675 F. Supp. 321, 322–23 (E.D. Va. 1987); *Federal Ins. Co.*, 448 F. Supp. at 726; *Berry*, 340 F. Supp. at 231; *Liberty Mut. Ins. Co.*, 223 Va. 317. In *Gordon*, the district court judge stated that § 2226 "was designed to inform an injured claimant against an alleged insured of a breach of policy terms which might cause the insured to become an uninsured motorist." 675 F. Supp. at 322 (*dicta*). No authority is offered for this proposition. It would seem that the district judge merely was alluding to the effect of the insurer's denial of coverage notice in accordance with the specific tort of that case. None of the other decisions held or otherwise suggested that the operation of § 38.2–2226 is limited to automobile liability policies.

Had the General Assembly intended to confine the operation of § 38.2–2226 to automobile liability policies, it would have included appropriate limiting statutory language to that effect. Since it has not, Aetna's argument with respect to the scope of the statute fails.

B. *Aetna's Declaratory Judgment Suit Is An Alternative to a Denial of Coverage Notice.*

Aetna further asserts that, as an alternative to providing the Denial of Coverage Notice, it has proceeded:

> in a preferred procedural manner by filing a declaratory judgment action while providing a defense under a Reservation of Rights to its insured in the underlying tort action.

Aetna Mem. at 7.

This Court finds that argument unpersuasive. First, had the General Assembly intended that the filing of a declaratory judgment action be an alternative to the Denial of Coverage Notice, it would have indicated that intention by the inclusion of statutory language to that effect. It has not done so, either by express language or by necessary implication. Second, even if this Court were to accept Aetna's proposition — that the filing of such an action within twenty days of the decision to deny coverage was the equivalent of giving the mandated notice — the instant action was not filed within the twenty day period prescribed by the General Assembly. Aetna's second argument also fails.

Aetna's declaratory judgment suit would seem to have been an appropriate way to litigate coverage issues *with its Insured.* But § 38.2–2226 addresses different policy considerations: the *prompt* notice to a claimant (or claimant's counsel) that the claim is potentially not covered by insurance.

C. *Aetna Has Not Denied Coverage.*

In its brief, Aetna next maintains that it has not denied coverage to its Insureds. Aetna Mem. at 7. But that premise is belied by Aetna's own words in the following passage in its December 17, 1992, letter to their Insured's insurance agent:

> This letter will advise you that we are currently intending to disclaim any and all coverage based on your failure to comply with the reporting condition of your policy despite knowledge on your part of the happening of the occurrence . . . .
>
> Finally, although we are continuing to defend this matter under a Reservation of Rights while seeking a Declaratory Judgment Action, this does not constitute any waiver of its Disclaimer of Coverage.

Motion for Judgment at Exhibit. 3. This argument, accordingly, is also rejected.

D. *§ 38.2–2226 Does Not Require a Waiver of Policy Defenses On Account of an Insurer's Failure to Give the Denial of Coverage Notice.*

At oral argument, Aetna recognized that, prior to the revision of § 38.1–389.1, and its recodification as § 38.2–2226, Virginia courts had consistently ruled that a liability insurer's failure to afford a claimant a Denial of Coverage Notice gave rise to a waiver by the insurer of its policy defenses. Aetna emphasizes, however, that those courts had relied upon the "such notice" language in § 38.1–389.1 as referring to *both* the Denial of Coverage and Reservation of Rights Notices. Aetna persuasively argues that the substitution of the phrase "within ten days" for "such notice" in the last sentence of § 38.2–2226, might demonstrate the General Assembly's intention (i) to retain the waiver of the insurer's policy defenses if it failed to afford a claimant a Reservation of Rights Notice, but (ii) to abolish a waiver of policy defenses for an insurer's failure to furnish a claimant the Denial of Coverage Notice.

This Court must first determine whether the plain language of § 38.2–2226 read as a whole requires the interpretation advanced by Aetna. *See Lee-Warren*, 241 Va. at 445; *VEPCO v. Prince William Co.*, 226 Va. 382, 387–88 (1983). The Court finds that it does not. It begs the question what consequences flow from a liability insurer's failure to afford a claimant the Denial of Coverage Notice. While this Court recognizes that courts of this Commonwealth may not construe the meaning of a statute if it is unambiguous, *Prince William Co.*, 226 Va. at 387–88, the law disfavors arguments, such as the one advanced by Aetna, that rights may be created without remedies for their violation. As the Supreme Court of Virginia declared in a somewhat different context, remedial statutes must be construed "to suppress the mischief and advance the remedy." *Board of Supervisors v. King Land Corp.*, 238 Va. 97, 103–04 (1989). This Court, therefore, finds that § 38.2–2226 is ambiguous in that it creates a right of a claimant to both the Denial of Coverage and Reservation of Rights Notices but expressly a remedy for only an insurer's non-compliance with the second of these Notices.

In order to arrive at the meaning of § 38.2–2226, this Court must first take into account all of the statute and ascertain the purposes for

the General Assembly's enactment of it. Although this Court has not been presented with decisions construing § 38.2–2226, in the *Liberty Mutual Ins. Co.* decision, the Supreme Court of Virginia clearly delineated the reasons for the General Assembly's adoption of the Denial of Coverage Notice under § 38.1–389.1:

> The obvious purpose of the statute is to require a liability insurer that intends to rely on a breach of the terms and conditions of the policy contract, in defense of any claim under the policy, to furnish prompt notice of such intention to the claimant or his attorney so that steps may be taken by the claimant, a stranger to the insurance contract to protect its rights. *See Federal Ins. Co. v. Nationwide Mut. Ins. Co.*, 448 F. Supp. 723, 725–26 (W.D. Va. 1978).

223 Va. at 325.

Judge Glenn Williams' opinion in the *Federal Ins. Co.* decision, cited with approval by Justice Compton in *Liberty Mut. Ins.*, sets forth the public policy behind the Denial of Coverage Notice in the following terms:

> The statute was intended to cover situations identical to the present case [involving the failure to afford a Denial of Coverage Notice]. The insurer can prevent, without difficulty, a claimant's wasting of finances and time pursuing a judgment that later proves to be uncollectible. Virginia, through this statute, has manifested a legitimate interest in safeguarding the rights of persons injured within her boundaries.

448 F. Supp. at 726.

That same public policy underlies § 38.2–2226. That policy is that liability insurers must give a Denial of Coverage Notice to claimants (or their counsel) in order to protect such claimants from wasting time, energy and money in pursuing uncollectible judgments. The continuation of this public policy is reflected not only by the words of the statute but also by the fact that in 1986 the General Assembly recodified § 38.2–2226 without substantively changing the language of § 38.1–389.1.

Aetna's contention leads to the anomalous conclusion that, in revising the last sentence of § 38.2–2226, the General Assembly intended disparate legal consequences for liability insurer violations of the Denial of Coverage Notice and Reservation of Rights Notice require-

ments. A violation of the former would give rise to no penalty; non-compliance with the latter, however, would result in an insurer's forfeiture of its policy defenses. The failure of a liability insurer to afford the Denial of Coverage Notice, however, would seem to visit more certain and more immediate prejudice upon a claimant than would be occasioned by its failure to provide the Reservation of Rights Notice.

The denial of coverage represents the insurer's definite decision not to voluntarily pay the policy proceeds. The agreement of the insurer and its insured to enter into a nonwaiver agreement involves only the possibility, albeit perhaps a probable one in most circumstances, that the insurer will elect to deny insurance coverage at a subsequent time.

Since the salutary and remedial reasons for the enactment of the Denial of Coverage Notice requirement is clear, and at least as compelling as those for the enactment of the Reservation of Rights Notice, this Court may not adopt the irrational construction of § 38.2–2226 advanced by Aetna. Such a construction would place undue emphasis on a few words used in the statute thereby nullifying the General Assembly's purposes for adopting the Denial of Coverage Notice requirement. *See Prince William Co.*, 226 Va. at 387–88; *VEPCO v. Citizens for Safe Power*, 222 Va. 866, 869 (1981); *Commonwealth Natural Resources, Inc. v. Commonwealth*, 219 Va. 529, 536–38 (1978); and *F.B.C. Stores, Inc. v. Duncan*, 214 Va. 246, 24950 (1973).

Therefore, although no remedy is expressly provided by the General Assembly for a liability insurer's violation of the Denial of Coverage Notice requirement, one is necessarily implied. *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S. Ct. 400, 405 (1969); *Norfolk So. Ry. v. Lassiter*, 193 Va. 360, 364 (1952). The dispositive question then becomes what remedy is implied. In that regard, the General Assembly determined that a liability insurer be required to waive its policy defenses if the Reservation of Rights Notice was not timely given. Since, as indicated above, the consequences to a claimant of an insurer's non-compliance with the Denial of Coverage Notice requirement are at least as prejudicial as those from an insurer's non-compliance with the Reservation of Rights Notice, a waiver of the insurer's policy defenses is similarly implied. Since the General Assembly has expressly provided that a waiver of policy defenses will arise by operation of law following non-compliance with the Reservation of Rights Notice ten day period, this Court similarly concludes

that § 38.2–2226 implies that an insurer's policy defenses be waived by operation of law after the expiration of the twenty day period for giving the Denial of Coverage Notice.

For the foregoing reasons, this Court determines that Aetna's argument, that § 38.2–2226 requires that no waiver arise from a liability insurer's failure to give a Denial of Coverage Notice to a claimant within twenty days of its decision to deny such coverage, is inconsistent with the public policy of this state as reflected by both the express language of § 38.2–2226 and prior case law construing its predecessor statute, § 38.1–389.1. In such circumstances, this Court concludes that a literal interpretation of the statute must give way to a construction which advances, and does not do violence to, the legislative policy intended. *See Prince William Co.*, 226 Va. at 388–89. This Court, therefore, holds that § 38.2–2226 necessarily implies that a waiver of a liability insurer's policy defenses arises by operation of law in the event the insurer fails, as required, to afford the Denial of Coverage Notice to a claimant (or its counsel).

Therefore, since Aetna was required by § 38.2–2226 to afford such a notice to the McCormacks (or their counsel) on or before January 6, 1993, and failed timely to provide that notice, the McCormacks' motion for summary judgment is granted. Aetna's rights to deny coverage under its liability policy covering the Insureds with respect to the accident involving the McCormack child — to the extent of Aetna's duty under the policy to indemnify the Insureds — are deemed waived by operation of law.

This decision is without prejudice to a later determination of the rights and obligations between Aetna and their Insureds with respect to any policy proceeds which may be paid by Aetna to the McCormacks.

The parties have not briefed the question of the duties between Aetna and its Insureds. Those issues will presumably be addressed by those parties in future proceedings in this case. Therefore, this letter opinion disposes only of the declaratory relief sought by Aetna against the McCormacks.