## Richmond

RAPPAHANNOCK LEAGUE FOR ENVIRONMENTAL PROTECTION, INC., ET AL. v. VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

CARROLL J. SAVAGE v. VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

CULPEPER LEAGUE FOR ENVIRONMENTAL PROTECTION, ET AL. v. VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

BOARD OF SUPERVISORS OF FAUQUIER COUNTY v. VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

March 5, 1976.

Record Nos. 751084, 751085, 751086 and 751087.

Present, All the Justices.

*John F. Kay, Jr.* (*Angus H. Macaulay; Mays, Valentine, Davenport & Moore,* on brief), for appellants in Record No. 751084.

*Carroll J. Savage, pro se* in Record No. 751085.

*Clarence T. Kipps, Jr.* (D. C. ), for appellants in Record No. 751086.

*L. Lee Bean* (*Charles Foley*, on brief), for appellant in Record No. 751087.

*Evans B. Brasfield* (*Joseph M. Spivey, III; Hunton, Williams, Gay & Gibson*, on brief), for appellees in Record Nos. 751084, 751085, 751086 and 751087.

COMPTON, J., delivered the opinion of the court.

In this environmental case, a number of intervenors appeal as of right from an order of the State Corporation Commission, which granted applications of Virginia Electric and Power Company (Vepco) and Potomac Edison Company of Virginia for approval and certification of electrical facilities under Code § 56-46.1 and the Utility Facilities Act, Code §§ 56-265.1 *et seq.*

In August and November 1972 Vepco and Potomac Edison (the Companies) filed with the Commission applications requesting issuance of Certificates of Public Convenience and Necessity authorizing construction of certain transmission facilities and substations, described as follows in the Commission's final order, and demonstrated on the Commission's diagram included as an appendix to this opinion:

1. Remington-Warrenton line. "Vepco application for a 115 kilovolt (kv) transmission line from an existing substation at Remington in Fauquier County to a proposed 115-34.5 kv substation at Warrenton in Fauquier County.

2. Morrisville-Bristers line. "Vepco application for a 500 kv substation at Morrisville in Fauquier County and a 500 kv transmission line from the proposed substation to a point near Bristers Junction in Fauquier County where the proposed line interconnects with an existing 500 kv transmission line.

3. Morrisville-Remington line. "Vepco application for a 230 kv transmission line from the proposed Morrisville substation to the site of Vepco's existing substation near Remington. Vepco proposes to expand the capacity of the substation at Remington.

4. North Anna-Morrisville line. "Vepco application for a 500 kv

transmission line from Vepco's North Anna Nuclear Generating Station in Louisa County to the proposed Morrisville substation. 5. Mt. Storm-Morrisville line. "Vepco application for a 500 kv transmission line from proposed Vepco Morrisville substation in Fauquier County, extending to a point in Warren County. Potomac Edison application for construction of a continuation of Vepco's 500 kv transmission line from the point in Warren County to the Virginia-West Virginia boundary.

"The 500 kv line will then be extended from the Virginia-West Virginia boundary to Vepco's Mt. Storm generating station in West Virginia."

Those intervening and opposing the applications before the Commission are the parties appellant: Rappahannock League for Environmental Protection, Inc., Warren County League for Environmental Protection, Frederick County League for Environmental Protection, Janet M. Bean, Osborne A. Gore and R. Phillip Irwin (collectively RLEP); Carroll J. Savage; Culpeper League for Environmental Protection and Clarence T. Kipps, Jr. (collectively CLEP); and Board of Supervisors of Fauquier County (Board). The applications were considered in a consolidated proceeding because the location and operation of all the proposed facilities are interdependent. After hearings held on 21 days during the period from March 1973 to February 1974, the Commission entered the order appealed from on May 15, 1975. It found, pursuant to the Utility Facilities Act, that the proposed facilities were "necessary to serve public convenience and necessity." It further found, pursuant to Code § 56-46.1,[1] enacted in 1972, that

---

[1]Insofar as pertinent here, the statute provides:

"Whenever under any provision of law whatsoever, applicable to the Commission, the Commission is required to approve the construction of any electrical utility facility, it shall give consideration to the effect of that facility on the environment and establish such conditions as may be desirable or necessary to minimize adverse environmental impact. In such proceedings it shall receive and give consideration to all reports that relate to the proposed facility by State agencies concerned with environmental protection.

"No electrical transmission line of two hundred kilovolts or more shall be constructed unless the State Corporation Commission shall . . . approve such line. As a condition to such approval the Commission shall determine that the corridor or route the line is to follow will reasonably minimize adverse impact on the scenic and environmental assets of the area concerned. If, prior to such approval, any interested party shall request a public hearing the Commission shall, as soon as reasonably practicable after such request, hold such hearing or hearings at such place as may be designated by the Commission. This section shall apply to such transmission lines for which rights-of-way acquisitions have

the "corridors or routes to be followed by the required lines, as proposed by [the Companies], will reasonably minimize adverse impact on the scenic and environmental assets of the area concerned" and that "existing rights-of-way cannot adequately serve the needs, herein established, of Vepco and Potomac Edison." The Commission accordingly ordered that the Companies be authorized to construct the proposed facilities and that Certificates of Public Convenience and Necessity evidencing that authorization be issued. In a subsequent written opinion, dated September 12, 1975, the Commission, one member dissenting in part, stated the reasons for its decision.

Under the applicable constitutional provision, Va. Const. art. XI, § 1,[2] and the foregoing statutes, three broad issues developed in this case, *viz.*, (1) need—whether the public convenience and necessity require the construction of the proposed facilities (Code § 56-265.2), (2) environmental impact—whether the proposed routes reasonably minimize adverse impact on the scenic and environmental assets of the area concerned, and (3) use of existing rights-of-way—whether the existing rights-of-way can adequately serve the needs of the Companies.

While the respective assignments of error make a broadside attack on the Commission's findings with respect to all of the foregoing issues, the briefs and argument have focused upon specific applications and issues, according to the interest of the particular intervenor. Since no question has been raised concerning the correctness of the Commission's decision as it relates to the Remington-Warrenton and Morrisville-Remington lines, further detailed discussion of the applications for those facilities is unnecessary.

As to the remaining applications, the decision is attacked as it relates to but two of the foregoing three broad issues. *Need* for the proposed facilities is not seriously questioned. The assault of the intervenors is concentrated on the *environmental impact* issue and on the *use of existing rights-of-way* question.

not been completed as of April eight, nineteen hundred seventy-two. In any such hearing the public service company shall provide adequate evidence that existing rights-of-way cannot adequately serve the needs of said company. . . ."
[2]"To the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings. Further, it shall be the Commonwealth's policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth."

■ Before summarizing the relevant facts, it should be noted the Commission clearly recognized the balance to be effected between the competing interests in this case, as illustrated by the following excerpt from its opinion commenting upon the citizen testimony given during the first two hearings held in Warrenton and Washington, Virginia:

> "Many citizens were understandably concerned that the proposed towers and lines would cause damage to scenic beauty and diminishment in land values, along with other objections. It is the testimony of these witnesses which makes the Commission acutely aware of the grave responsibility conferred on it by § 56-46.1 of the Code. It serves also to highlight and emphasize the clash in values so much a part of today's society. On the one hand we seek growth in industry, business, and home conveniences requiring greater consumption of energy, particularly electric energy. On the other hand, society today attributes great value to our natural environment and historic features. While society tries to balance the two values, it seems unavoidable that the former continually encroaches upon the latter. In reaching its present decision, the Commission fully recognizes the importance society places on the preservation of the environment, but it must likewise recognize the importance of electric energy to our way of life with its attendant demands for new generating stations, transmission lines, and associated facilities."

### Need.

The proceeding involved five proposed transmission projects. The evidence showed that the facilities are necessary to satisfy four separate public needs, but the facilities were integrated "to result in the minimum practical construction to produce a reliable system". A Vepco witness listed these needs, which he said resulted from a growth in demand for electricity, as "reinforcement of the distribution system serving Fauquier County through a centrally located transmission substation; reinforcement for an overloaded transmission line serving loads in the counties of Fauquier, Culpeper, Greene, Madison, Rappahannock, Spotsylvania, Orange and Louisa; additional transmission capacity between a nuclear generating station in Louisa County and the growing demand in northern Virginia and the Washington, D. C. metropolitan area; and additional transmission capacity between generating plants in the West Virginia and Pennsylvania coal fields and growing demand in northern Virginia and the Washington, D.C.

metropolitan area." Further development here of this issue is unnecessary. It is sufficient to say that we agree with the Commission, which found the evidence supporting need offered by the Companies and the Commission's Staff to be "clear and convincing."

## Environmental Impact.

■ This question deals with the reasonableness of the transmission line routes selected by the Companies. The comprehensive investigations of these routes made by Vepco and Potomac Edison, and by the Commission Staff, enabled the Commission to determine (1) whether the routes proposed by the Companies would reasonably minimize environmental impact, (2) whether alternate routes suggested by the intervenors should be approved, or (3) whether additional routes should be investigated.

The Companies' own investigation of the locations for the facilities was reviewed by a firm of environmental planning consultants retained by the Companies to evaluate the environmental impact on the affected areas. We will not here document the scope of this painstaking study, which took four to five months to complete. The record demonstrates that it was thorough, objective, and exhaustive—and supported use of the routes selected by the Companies. The consultant concluded, from his detailed study of the proposed facilities, that Vepco and Potomac Edison "satisfied the applicable environmental requirements", including Federal Power Commission standards for the protection of natural, historic, scenic and recreational values.

From the information developed by the independent investigation of the Commission's staff and by the Companies' examination of the proposed routes, the selection of which began in 1969, the Commission found that the proposed corridors or routes would reasonably minimize adverse environmental impact. We hold that the evidence was entirely sufficient to support that finding.

## Use of Existing Rights-of-Way.

■ RLEP opposed construction of the Mt. Storm-Morrisville line, contending the electrical needs of Vepco and Potomac Edison could be met by use of existing rights-of-way, that is, by placing a second 500 kv line parallel and adjacent to the existing 500 kv line on the Mt. Storm-Doubs-Loudoun corridor.[3]

[3]We will assume, but not decide, that, as the intervenors argue, "expansion of the width of an existing right-of-way is necessarily intended by § 56-46.1", when in the

CLEP opposed construction of the North Anna-Morrisville line, contending that existing rights-of-way should be used. It proposed a line route which would commence at the North Anna Nuclear Power Station and proceed on Vepco's proposed route for about 12 miles to a point near Robertson Run in Spotsylvania County, thence easterly along existing telephone rights-of-way for about 11 miles to Vepco's existing Ladysmith-Bristers 500 kv line, thence on and adjacent to these existing rights-of-way to Bristers.

The Board opposed the location of a substation at Morrisville. This proposed substation will serve as the hub for the Mt. Storm-Morrisville line, North Anna-Morrisville line, Morrisville-Bristers line, and Morrisville-Remington line. The Board urged that use of existing rights-of-way should eliminate the need for the Morrisville substation, and also that the proposed substation should be relocated.

The Companies opposed the use of existing rights-of-way, the widths of which vary between 150 and 235 feet, or of expanded existing rights-of-way, to accommodate additional transmission lines. The reasons for such opposition, as stated in the Commission's opinion, were "(1) that concentration of two or more principal lines on a single right-of-way would jeopardize reliability of service, (2) that the location of certain lines on existing rights-of-way would not permit adequate service of growing loads and would probably require new lines to serve such loads, (3) that, in some instances, placing new lines parallel to existing lines would be more detrimental to the environment than the use of new corridors, and (4) the use of existing corridors is prohibitive because of the additional cost."

After focusing upon the foregoing issues, principally reliability[4] and cost, the Commission decided that "the public interest would not be served" by adopting RLEP's suggestion; that the planned North Anna-Morrisville route should not be altered as urged by CLEP; and that the plans for the location of the Morrisville substation should not

last quoted sentence, note 1 *supra*, of the statute the phrase "existing rights-of-way" is used. They argue that "as a practical matter, the statute would in most instances be meaningless if expansion of an existing right-of-way were not contemplated. Unless the utility had acquired right-of-way for the existing line greatly in excess of that needed, rarely, if ever, could a *new* line be constructed within the existing width of the right-of-way. Thus, if a utility could escape its responsibility to use existing rights-of-way by such a narrow interpretation of the statute, proceedings before the Commission would indeed be futile."

[4]The consequences of "cascading" were a primary concern of the Companies on the issue of reliability of service. Cascading was defined as "the uncontrolled successive loss or outage of electric utility facilities triggered by a single incident", such as an airplane crash, a forest fire, a wind storm of unusual force, or sabotage.

be changed, as contended by the Board.[5] We think the evidence is overwhelming in support of these findings of the Commission.

■ Directly related to the *use of existing rights-of-way* issue is the following question, raised by all intervenors: Did Vepco and Potomac Edison fail to provide adequate evidence, as required by Code § 56-46.1, that existing rights-of-way cannot adequately serve the needs of the Companies for the proposed transmission lines? This is more than a sufficiency of the evidence issue, which we have just disposed of. It is a burden of proof question.

The intervenors contend that the Commission misapplied the law and reversed the burden of proof. They argue that the Commission allowed the Companies to *justify* the routes selected prior to the 1972 enactment of the foregoing statute, rather than requiring them to prove, as directed by the statute, that the existing rights-of-way *cannot* adequately serve their needs. The intervenors say the burden was improperly shifted to them to show that the existing rights-of-way *can* serve the electrical needs of the Companies.

The effect of this argument is that the Commission was ignorant of the burden of proof requirement of the statute, or misconstrued it; or, even if the Commission was cognizant of and correctly interpreted this statutory directive, the Commission disregarded it. We do not agree with the intervenors' contention.

The statute, in explicit terms, specifies that "the public service company shall provide adequate evidence that existing rights-of-way cannot adequately serve the needs of said company." Note 1 *supra.* The Companies agree the burden is placed squarely upon them to prove that fact.

From the beginning of the case to its end, the Commission's attention was focused on this issue. During the opening statements, placement of this statutory burden on the Companies was emphasized by General Counsel for the Commission and counsel for RLEP. In the Commission's final order and opinion, the issue was treated in detail; the intervenor's argument to the contrary concentrates on isolated sentences of the opinion taken out of context. Commencing at page 18 of the opinion, the Commission focused on the question; it noted that an intervenor argued in its brief that the *"Companies fail[ed] to show* that reliability of electric service would be unreasonably jeopar-

---

[5]The unopposed Remington-Warrenton route, planned to carry a 115 kv line, was approved. Code § 56-46.1 applies only to lines of 200 kv or more, but the route was considered by the Commission because of its relationship to the other proposed facilities.

dized by constructing the new 500 kv line parallel to the existing line, and *thus fail*[ed] *to carry the burden imposed* by Code § 56-46.1 to '. . . provide adequate evidence that existing rights-of-way cannot adequately serve the needs of said Company.'" (emphasis supplied). Thereafter, and for nine pages of a 38-page opinion, the Commission discussed the evidence relating to the *existing rights-of-way* issue, concluding with the finding: "On consideration of the evidence, we are of the opinion that existing rights-of-way are not available for building the additional facilities." The content of the Commission's decision demonstrates, therefore, that this statutory burden of proof was properly placed on Vepco and Potomac Edison, and that the decision of this issue was not based exclusively on the lack of evidence of the intervenors.

We also disagree with the intervenors on another phase of the foregoing burden of proof issue. They argue that the statute requires the Companies to show not only that existing rights-of-way could not adequately serve their needs, but also that "no reasonable plan" can be devised which will make the use of an existing right-of-way acceptable to meet those needs. We do not decide the question whether, as the Companies argue, the intervenors' position results in an erroneous extension of the statute. We will assume the intervenors accurately construe it. Nonetheless they may not prevail because we conclude the evidence is sufficient to show the Companies did in fact consider, and reject, the use of existing rights-of-way as alternative routes.[6]

There are additional issues in the case raised by the parties, including

---

[6]Typical of the testimony on this issue is the following excerpt from the cross-examination of an expert witness for the Companies, retained to review the general system planning, relating to the Mt. Storm-Morrisville line:

"Q Well, your assignment was to review the route already tentatively arrived upon by VEPCO, was it not?
"A Yes.
"Q Your assignment was not to try to find a way to use the existing right of way from Mt. Storm to Doubs to Loudoun to accomplish the same purpose?
"A These to me mean exactly the same thing.
If I'm asked to review a certain solution, that means to me to examine alternatives. I don't know how you can critique a solution without examining and looking for alternates that will do the same job.
"Q But as I understand it, the alternates that you reviewed, according to your testimony, were the ones that VEPCO had proposed?
"A Well, if you mean did I come up with any solution that involved neither double circuiting or an independent line, no, I did not.
"Q Did you try to?
"A Yes.
"Q You did try to?
"A Sure."

intervenor Savage's contention that the Commission failed to make a "meaningful determination concerning minimization of environmental impact" as to a short segment of the Mt. Storm-Morrisville line near High Knob and Manassas Gap between the Rappahannock River and Front Royal. We have considered these additional contentions, and find they have no merit.

In conclusion, our examination and study of this entire record convinces us the Commission properly applied the law in this case; and, according the Commission's findings of fact the presumption of correctness to which they are entitled, *Board of Supervisors* v. *Appalachian Power Co.*, 216 Va. 93, 105, 215 S.E.2d 918, 927 (1975), we are likewise convinced those findings should not be disturbed on appeal. Consequently, we affirm the order of the Commission.

*Affirmed.*

HATFIELD FERRY

FORT MARTIN

PRUNTYTOWN

MT. STORM

DOUBS

NORTH

LOUDOUN

WARRENTON

POSSUM POINT

BRISTERS JUNCTION

REMINGTON

MORRISVILLE

FREDICKSBURG

W. VA.
VA.

DOOMS

CHARLOTTESVILLE

NORTH ANNA

LADYSMITH

ELMONT

RICHMOND

CLOVERDALE

LEGEND

| EXISTING | | PROPOSED | |
|---|---|---|---|
| ■ | POWER STATIONS | □ | |
| ▲ | SUBSTATIONS | △ | |
| —— | TRANSMISSION LINES | — — — | |