## Richmond

VIRGINIA ELECTRIC AND POWER COMPANY

V.

BOARD OF COUNTY SUPERVISORS OF PRINCE WILLIAM
COUNTY, OFFICE OF THE ATTORNEY GENERAL,
DIVISION OF CONSUMER COUNSEL, AND
STATE CORPORATION COMMISSION

December 2, 1983.

Record No. 830721.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and
Gordon, Retired Justice.

*Guy T. Tripp, III (Darla B. Tarletz; Hunton & Williams*, on briefs), for appellant.
*Donald G. Owens; John H. Foote, County Attorney (Gerald L. Baliles, Attorney General; Anthony Gambardella, Assistant Attorney General; Lewis S. Minter*, on briefs), for appellees.

POFF, J., delivered the opinion of the Court.

This appeal challenges the jurisdiction of the State Corporation Commission to conduct an environmental-impact review of a proposal to construct a 230 kilovolt (kv) transmission line in a corridor which presently carries a 115 kv line and a 500 kv line.

Virginia Electric and Power Company (Vepco) proposes to construct the new line in an existing corridor connecting its Loudoun and Gainesville substations. All rights-of-way were acquired prior to 1969 at a cost of more than $350,000. On September 17, 1981, the Commission granted Vepco's application under the Utility Facilities Act, Code §§ 56-265.1, *et seq.*, for an amendment to its certificate of convenience and necessity. Following our decisions three months later in *VEPCO v. Citizens*, 222 Va. 866, 284 S.E.2d 613 (1981), and *Fairfax County v. VEPCO*, 222 Va. 870,

284 S.E.2d 615 (1981), the Commission directed Vepco "to show cause why it should not be enjoined from constructing [the 230 kv] transmission line without prior approval by this Commission under § 56-46.1 of the Code of Virginia". By final order entered January 19, 1983, the Commission ruled that it "has jurisdiction over the line in question under § 56-46.1" and enjoined Vepco "from any further construction . . . until such time as it has obtained the requisite approval under § 56-46.1." The Office of the Attorney General, Division of Consumer Counsel, and The Board of County Supervisors of Prince William County elected to participate with the Commission as appellees in Vepco's appeal.

In its first session following adoption of the new Virginia Constitution,[1] the General Assembly enacted Code § 56-46.1. Acts 1972, c. 652. In its original form, the statute read in pertinent part as follows:

No electrical transmission line of two hundred kilovolts or more shall be constructed unless the State Corporation Commission shall . . . approve such line. As a condition to such approval the Commission shall determine that the corridor or route the line is to follow will reasonably minimize adverse impact on the scenic and environmental assets of the area concerned. . . . This section shall apply to such transmission lines for which rights-of-way acquisitions have not been completed as of April eight, nineteen hundred seventy-two.

The last sentence quoted above, which the parties call a "grandfather clause", is the focus of the issue on appeal. By amendments effective July 1, 1983, the General Assembly deleted the grandfather clause and substituted a provision which exempts "transmission lines constructed prior to January 1, 1983, for which the Commission has issued a certificate of convenience and necessity." Acts 1983, c. 438. Vepco agrees that "as a result of the 1983

---

[1] Article XI, § 1 provides:

§ 1. Natural resources and historical sites of the Commonwealth. — To the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings. Further, it shall be the Commonwealth's policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth.

amendments all new transmission lines of more than 200 kilovolts, regardless of time of acquisition of rights-of-way, will be subject to Commission review under § 56-46.1". As Vepco points out, however, the amendments further provided that "any electrical transmission line that is the subject of litigation under § 56-46.1 on the effective date of this Act shall be governed by § 56-46.1 as in effect on January 1, 1983." *Id.*

Invoking the grandfather clause, Vepco argues that, inasmuch as all rights-of-way required for the Loudoun-Gainesville line were acquired prior to 1972, the line is exempt from environmental-impact review; that the Commission had no jurisdiction to require a review; and hence, that we should reverse its order and dissolve the injunction.

The record shows that, following enactment of § 56-46.1, the Commission issued 10 certificates of convenience and necessity for transmission lines of more than 200 kv without benefit of the review required by the new statute. In each case, the rights-of-way had been acquired before April 8, 1972, and Vepco concludes that "the Commission itself must have subscribed" to Vepco's view of the legislative intent underlying the grandfather clause.

This seems a reasonable conclusion and, as always, the Commission's interpretation of legislative intent is entitled to great weight. But it is for this Court to determine the import of statutory language in light of what appears to be the central legislative goal.

It appears the Commission modified its interpretation of the grandfather clause and issued the show cause order against Vepco as a result of our opinions in *Citizens* and *Fairfax*. While the grandfather clause was not in issue in *Citizens* and was factually inapplicable in *Fairfax*, arguments advanced in both cases required us to consider whether the Commission had jurisdiction or "power" under § 56-46.1 to review a proposal to upgrade an existing corridor by the construction of a new line transmitting more than 200 kv.

In *Citizens*, we said:

> The interpretation urged on us by Vepco would preclude Commission review of construction of transmission facilities whenever the company decides to use an existing corridor. This would be the case irrespective of the changes the com-

pany proposes and irrespective of changes in the area that may have occurred since the corridor was first established.

*Id.* at 869, 284 S.E.2d at 614-15. Declining to accept the interpretation Vepco urged, we concluded that "the Commission had the power to review the environmental impact of upgrading the existing . . . corridor." *Id.*

In *Fairfax*, the challenge to the jurisdiction of the Commission to upgrade an existing corridor was raised by the County. In the course of our analysis upholding Vepco's argument that the grandfather clause was factually inapplicable, we reaffirmed our finding of legislative intent in *Citizens*.

> The language in issue [the grandfather clause] was designed to protect those utilities which had acquired rights-of-way, but had not started construction, before the act was passed. The County's interpretation would exempt any transmission line from statewide control, as long as the utility used an existing corridor. There is nothing in the language, history, or spirit of the section to support such an interpretation, and we reject it.

*Id.* at 874, 284 S.E.2d at 617.

In the case at bar, Vepco's position is that the Commission's environmental-impact jurisdiction over "existing" corridors is limited to cases in which rights-of-way were acquired, wholly or in part, after April 8, 1972. If Vepco's construction is sound, then so long as a utility had acquired a corridor before that date, it was free (until the enactment of the 1983 amendments) to install in that corridor as many transmission lines, carrying as much voltage, as it chose, regardless of the effect its decision might have upon the environment.[2] We cannot agree that the General Assembly intended the result Vepco's construction of the grandfather clause would entail.

We are mindful of the general rule invoked by Vepco that courts should not construe statutory language which is facially unambiguous. Whenever possible, however, it is our duty

---

[2] Obviously, as Vepco acknowledged in an earlier case, " 'in some instances, placing new lines parallel to existing lines would be more detrimental to the environment than the use of new corridors' ". *Rappahannock League* v. *VEPCO*, 216 Va. 774, 780, 222 S.E.2d 802, 806 (1976).

to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal. "[A] statute is not to be construed by singling out a particular phrase." *Citizens* at 869, 284 S.E.2d at 615. Provisos, exceptions, exemptions, and grandfather clauses, although facially unambiguous in themselves, are inherently inconsistent with the spirit of the statute of which they are a part. Accordingly, where, as here, a regulatory statute is designed to promote the public welfare and the scope of the coverage intended is drawn in doubt by a regulated public service company claiming exemption, courts must determine what was intended.

"The purpose for which a statute is enacted is of primary importance in its interpretation or construction." *Norfolk So. Ry. Co. v. Lassiter*, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952). In the language of § 56-46.1, the manifest legislative purpose was to "minimize adverse impact on the scenic and environmental assets" resulting from construction of high voltage transmission lines. Typically, legislative history is scanty. But it is reasonable to assume that, at the time the statute was under consideration, some utilities had already acquired corridors for the purpose of constructing lines in excess of 200 kv. Even though such lines may have been certificated under the Utilities Facilities Act, such utilities faced the danger of losing the investment they had made in acquiring rights-of-way if they should fail to win approval under the new statute. Since the utilities could not have anticipated the enactment of new standards, the General Assembly decided to grant them an exemption to protect their investments. We are of opinion, however, that the language the draftsman chose to achieve that purpose swept more broadly than the legislature intended.

Admittedly, the grandfather clause, read in isolation from the rest of the statute, seems to apply not only to cases where a pre-1972 corridor was acquired for the purpose of constructing a 200 kv line, but also to cases such as this where a utility proposes to install a 200 kv line in a pre-1972 corridor originally acquired to carry other lines.[3] Yet, to construe and apply the exemption so broadly is to ignore the evolutionary nature of the mischief the legislature sought to regulate. Population grows and shifts, land

---

[3] There is no evidence in the record before us that at the time Vepco acquired the rights-of-way, it planned to upgrade the Loudoun-Gainesville corridor in the manner now proposed, and we do not notice counsel's suggestion to such effect.

uses change, and the need to control the potential for environmental abuse expands apace. We believe that the General Assembly, aware of future contingencies as well as contemporary circumstances, had no intention of extending the grandfather exemption to any 200 kv transmission line other than one for which rights-of-way had been acquired before the enactment of the new statute.

Having in mind the legislative goal, rooted as it is in the constitutional mandate, and construing § 56-46.1 as a whole, we conclude that the grandfather clause does not apply to Vepco's proposal to upgrade the Loudoun-Gainesville transmission corridor, and we will affirm the Commission's order.

*Affirmed.*

GORDON, R.J., dissenting.

In enacting Code § 56-46.1 in 1972, the General Assembly included a grandfather clause by providing the statute should apply only to transmission lines for which right-of-way acquisitions had not been completed on April 8, 1972. The acquisitions for the transmission line involved in this case were completed before April 8, 1972. So by the clear terms of Code § 56-46.1, the statute does not apply.

Recently, the General Assembly concluded that the grandfather clause was too broad. In 1983, it amended the statute to make it apply prospectively to all transmission lines. Because the Act expressly made the amendment inapplicable to cases in litigation, the amendment does not apply to this case.

Although restricted to Code § 56-46.1 as originally enacted, the Commission added a provision that did not appear in the statute. The Commission ruled that Code § 56-46.1 applied not only to transmission lines built on rights-of-way acquired after April 8, 1972, as the statute required, but also to transmission lines *supplanting existing transmission lines* built on rights-of-way, whether acquired before or after that date. In so ruling, the Commission amended the statute, a function it should have left to the General Assembly.

This Court has decided two cases involving Code § 56-46.1, *VEPCO v. Citizens*, 222 Va. 866, 284 S.E.2d 613 (1981), and *Fairfax County v. VEPCO*, 222 Va. 870, 284 S.E.2d 615 (1981).

*Citizens* did not concern the grandfather clause. In my opinion, it has nothing to do with this case.

*Fairfax* concerned, as does this case, the grandfather clause and a new transmission line that would (in part) supplant at a higher voltage an existing line. The Court held Code § 56-46.1 applicable because Vepco had not acquired requisite rights-of-way before April 8, 1972. The underlying rationale of the opinion, as I read it, is that had the rights-of-way been acquired before April 8, 1972, Code § 56-46.1 would not have been applicable.

COCHRAN, J., joins in dissent.