## CIRCUIT COURT OF AUGUSTA COUNTY

Mark F. Lahey

v.

Gene M. Johnson,
Director

November 16, 2010

Case No. CL09000010-00

By Judge Victor V. Ludwig

This matter is before the Court on the Commonwealth's Motion To Dismiss the Petition for Habeas Corpus filed by Mark F. Lahey. On April 10, 2006, Lahey pleaded not guilty to two counts of attempted murder. At the sentencing hearing on October 25, 2006, the Court imposed sentences of nine years on each conviction, yielding a total sentence imposed of eighteen years. By orders of June 27, 2007, and December 27, 2007, respectively, the Court of Appeals of Virginia and the Supreme Court of Virginia denied Lahey's appeals. The narrow issue at this stage of this proceeding is whether Lahey has timely filed his Petition for Habeas Corpus. The decision has been a long time coming, but then neither of the parties offered much serious or careful analysis of the issues to aid the Court in making its decision.

Nevertheless, having considered all of the arguments, it is the Court's conclusion that Lahey did not timely file his Petition for Habeas Corpus, and it is dismissed.

### I. *Procedural Facts*

By letter dated December 27, 2008, David B. Hargett, Esquire, on behalf of Lahey, sent to the Clerk of this Court a check in the amount of $32.00 and an original and one copy of a petition for habeas corpus. Because the clerk determined that the filing fee (the Fees)[1] was insufficient by $5.00, by email on December 29, 2008, the clerk notified Mr. Hargett of the shortage

---

[1] I use "filing fee" as a generic (and not altogether accurate) term. In fact, scattered throughout the Code are various clerk's fees, costs, assessments, and taxes that the Clerk is obliged to collect in conjunction with civil litigation.

and did not file the petition. I note that December 27, 2008, was a Saturday, so the earliest the letter could have arrived in the Clerk's office was the following Monday, December 29, 2008. By letter of December 30, 2008, Mr. Hargett mailed the additional $5.00, although the Clerk did not receive it until January 5, 2009, at which time the petition was stamped and filed. The Clerk's office was closed half a day on December 31, 2008, and all day on January 1 and 2, 2009, and January 3 and 4, the following Saturday and Sunday. At Mr. Hargett's request, the Clerk did not issue service of process at that time, and the record reflects that, by letter of October 16, 2009, Mr. Hargett sent a copy of the petition to the Office of the Attorney General with the request that it endorse an acceptance of service.

On November 3, 2009, Leah A. Darron, Senior Assistant Attorney General, filed a motion to dismiss on the basis that the petition was not timely filed, to which Mr. Hargett responded on November 17. Ms. Darron filed a reply on March 16, 2010, and Mr. Hargett replied to that on April 9. The parties argued the matter by telephone on July 6, 2010.

## II. *Analysis*

Neither party questioned the amount of the Fee which was assessed or any of its components. Indeed, the sole issues which both parties argued were (a) whether or not the petition can be deemed to have been timely filed without full payment of the Fee (and there is no clear answer that the Court can find) and (b) whether or not the Court has the authority to extend the time for filing the Fee on the ground that Lahey had "substantially complied" with his filing obligations.

### A. *Regarding Whether the Petition Is Filed without Full Payment of the Fee*

The Rules and the statutes, which use undefined terms and generic language and manifest considerable flexibility in apparent meanings of various forms of the phrases such as "file a [pleading]" and "commence an action," are not particularly enlightening. Although there does not appear to be much question as to when an action must be filed, one must navigate through a maze of rules, statutes, and case law to attempt to determine what constitutes the filing of, or the commencement of, an action.

Va. Code § 8.01-654(A)(2) establishes the time frame, in the nature of a statute of limitations, during which a petition for habeas corpus must be filed. It provides, in part:

> A habeas corpus petition attacking a criminal conviction or sentence . . . *shall be filed* within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

(Emphasis added.)

In this case, Lahey was required to file his petition not later than December 27, 2009 (one year after the final disposition by the Supreme Court of Virginia). Because that day was a Saturday, the time was extended to Monday, December 29. Va. Code § 1-210 provides:

> When the last day for performing an act during the course of a judicial proceeding falls on a Saturday . . . the act may be performed on the next day that is not a Saturday, Sunday, legal holiday, or day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly.

The Clerk received Lahey's petition on the last day on which it could be filed but did not stamp it filed because the package from Mr. Hargett did not include the entire Fee.

Va. Code § 8.01-655 provides that the petition filed "by a prisoner"[2] seeking a writ of habeas corpus:

> must be filed on the form set forth in subsection B. The failure to use such form and to comply substantially with such form shall entitle the court to which such petition is directed to return such petition to the prisoner pending the use and substantial compliance with such form.

I note that the statute "entitles" but does not expressly require the Court to return the petition filed without the payment of "court costs." That is a curious term in light of the other statutory provisions specifically applicable to habeas proceedings.

The "Notice" section of the statutorily prescribed form contains the following direction (the Direction):

> *The petition will not be filed without payment of court costs* unless the petitioner is entitled to proceed *in forma pauperis* and has executed the affidavit *in forma pauperis*.

(Emphasis added.)

The first code section directs when the petition must be filed; the second directs the form on which it must be filed. The Direction appears to provide that the payment of court costs is a mandatory predicate to filing.

---

[2] Because the language refers to a "petition filed by a prisoner," the statute arguably applies only to a prisoner acting *pro se*, although that is not certain. *See* Va. Code § 8.01-654.1 (regarding a prisoner under a sentence of death), which refers to "an indigent prisoner [filing] a petition within 120 days following appointment, made under § 19.2-163.7, of counsel to represent him." Although the statute refers to the indigent prisoner filing the petition, one could fairly conclude that it would be appointed counsel who would do so, on behalf of the prisoner.

The following Rule recognizes the practical limitations on the ability of a prisoner-petitioner to comply with delivering papers to the Clerk and his lack of control over when his mail is delivered to the United States Postal Service. Rule 3A:25 (expressly applicable to an inmate's filing for a writ of habeas corpus) provides, in part:

> In actions brought under Code § 8.01-654, filed by an inmate confined to an institution, *a paper is timely filed if deposited in the institution's internal mail system*, with first-class postage prepaid on or before the last day for filing.

(Emphasis added.)

By its terms, the Rule applies only to inmates who are filing *pro se*, not to petitioners who are represented by counsel.

Those who are filing *pro se* (and arguably those who are represented by counsel) are bound by the statutory Direction contained in the prescribed statutory form, requiring that they enclose the "court costs unless the petitioner is entitled to proceed *in forma pauperis* and has executed the affidavit *in forma pauperis*." In light of the mandatory language in the Direction, a plain reading of the Rule leads to the conclusion that the failure of the *pro se* inmate either to pay the costs or to include the necessary affidavit in the package would result in a failure timely to file even if the incomplete package were "deposited in the internal mail system on or before the last date for filing."

To be sure, the fact of the matter is that the Direction is found in Va. Code § 8.01-655 only as part of the instructions contained in the prescribed form, and it appears in the Acts of Assembly as a part of the form, not as a discrete provision of the legislation. I do not know how it appears in the enrolled act. However, it is not the only "direction." For example, the form's instructions provide that the petition "must be legibly handwritten or typewritten," it must be "signed by the petitioner and verified before a notary. . . ." It must "set forth in concise form" answers to the questions on the form. Although not required, the petitioner "may" add additional pages and he "may submit exhibits." Each of those instructions is entirely under the control of the petitioner. The petitioner, too, has control over whether he remits the "court costs" or the appropriate affidavit. However, the mandate that the "petition will not be filed without payment of court costs" appears either to be a caution to the petitioner of the importance of submitting a complete package or an instruction to the Clerk not to accept the petition without those costs (or the appropriate affidavit) being submitted with the petition.

Even assuming that Va. Code § 8.01-655 refers only to inmates who file petitions, it is difficult to articulate a justification to treat an incarcerated inmate more severely (or to hold him to a higher standard) than a prisoner who is represented by counsel with respect to the payment of a fee

necessary to effect a filing of a habeas proceeding. Focusing specifically on the statutes and Rule directly addressing petitions for habeas corpus, the Court concludes that the payment of the Fee was necessary to the filing of a habeas petition and that Lahey did not timely file his petition because he did not timely pay the Fee.

If one ignores any Equal Protection implications of a contrary ruling, ignores that the foregoing rule and statutes expressly apply to habeas petitions (rather than the following statutes and rules which have a more general application), and assumes, without deciding, that the location of the Direction dilutes the requirement that petitions for habeas corpus be filed only with the contemporaneous payment of "court costs" (or paperwork qualifying the litigant to proceed *in forma pauperis*), one must then examine generally when a civil action is deemed to be "commenced" or when a civil petition is deemed to be "filed."

1. Va. Code § 8.01-331 provides:

> When any civil action is commenced in a circuit court, any such action is removed to such court and the required writ tax and fees thereon paid, the clerk shall enter the same in the civil docket.

The placement of the second comma (at the end of the conjunctive clause regarding payment of the writ tax and fees) raises the question of whether payment is a predicate only to having a "removed" case entered on the civil docket. If so, the statute could be interpreted to require such payment only for a "removed" case because the reference to "a civil action [having been] commenced" necessarily implies that the writ tax and fees have been paid to the Clerk at the time of filing, a circumstance that would never be true with a case "removed" to the Court.

2. Rule 3:2(a) of the Rules of the Supreme Court of Virginia provides:

> A civil action shall be. commenced by filing a complaint in the clerk's office. . . . Upon filing of the pleading, the action is then instituted and pending as to all parties defendant thereto. The statutory writ tax and clerk's fees shall be paid before the summons is issued.

As reluctant as I am to make the observation, I suspect that the drafters of this Rule were less than precise in the use of the terms "statutory writ tax" or at least "clerk's fees." "Writ tax" is not defined in the Code, although, for civil actions, it appears to be the tax imposed by Va. Code § 58.1-1727, which refers to a "tax of $5 . . . imposed upon (i) the commencement of every civil action in a court of record." The only times the term appears in Title

8.01 are in (a) Va. Code § 8.01-129 (referring to appeals from the General District Court), (b) Va. Code § 8.01-331, which states that the case is not to be docketed until the "required writ tax and fees thereon [have been] paid," and (c) Va. Code § 8.01-675.1, referring to a dismissal of a petition in the Supreme Court if the writ tax is not timely paid. Regarding the reference to "clerk's fees," there are other monies that the Clerk is to collect which are neither the writ tax nor clerk's fees, as to which the Clerk serves merely as a collecting agent charged with the responsibility of funneling the money to another entity (such as money collected as a cost which is delivered to the Treasurer of the county pursuant to Va. Code § 42.1-70).

This Rule has an inherent problem that is apparent even in the pending proceeding. Literally read, the Clerk need not collect the "writ tax and clerk's fees" until she is asked to issue the summons. That reading of the Rule gives rise to the argument that the "writ tax and clerk's fees" are not due until the Clerk is asked to do something. However, the practical extension of the argument could create considerable consternation for Clerks and a probable substantial decrease in revenues for the Commonwealth. For example, the argument does not address when the Clerk would collect "writ tax and clerk's fees" in those cases in which notice is effected by an attorney-issued summons (as it was in this instance). It does not address when a Clerk would collect "writ tax and clerk's fees" in an instance in which the complaint is filed but nonsuited prior to any service. In such cases, the Clerk might never collect either the writ tax or any of the other statutorily required fees, costs, and assessments. In this case, Mr. Hargett did not ask for the issuance of a summons or any other process from the Clerk; rather, he obtained an acceptance of service from the Commonwealth; hence, he could argue that, far from being late, the Fee is not yet due. Depending on how the litigant handles a case, it could proceed through the entry of judgment with no involvement by the Clerk and with the result that the Clerk would never collect anything. That, of course, is contrary to and defeats the purpose of numerous statutes imposing on the Clerk the obligation to collect required payments. *See, e.g.*, Va. Code §§ 17.1-275, 17.1-278, 17.1-279, 17.1-281, and 42.1-70.

3. Va. Code § 58.1-1727 provides, in part:

> A tax of $5 is hereby imposed upon (i) the commencement of every civil action in a court of record, whether commenced by petition or notice, ejectment or attachment, other than a summons to answer a suggestion; (ii) the removal or appeal of a cause of action from a district court to a court of record; (iii) the appeal from the decision of the governing body of a county, city, or town to a court of record, including the appeal of any decision of a board of zoning appeals; (iv) an

attachment returnable to a court of record; and (v) a writ of mandamus sued out of any court, except the Supreme Court of Virginia. . . .

This is the "statutory writ tax," and, as is evident from other parts of this opinion, it is but a small portion of what the Clerk is to collect in conjunction with the filing of civil pleadings.

4. Va. Code § 58.1-1728 provides:

The taxes on suits or other judicial proceedings shall be paid to the clerk of court wherein the suit or other judicial proceeding is commenced.

If the suit is "commenced" when the papers are filed, without the contemporaneous payment of the "tax" (not to mention the other fees, costs, and assessments), then, presumably, the case could be filed with one Clerk (with no taxes paid), and, before any summons was issued, the plaintiff could move to transfer venue to another court. In such an instance, this statute would mandate that the litigant pay the "tax" to the Clerk of the Court in which the papers were originally lodged, not to the Clerk of the Court to which the case was moved. Hence, the Clerk of the latter Court would need to coordinate with the Clerk of the former Court before process could be issued pursuant to Rule 3:2(a). That assumes, of course, that the Clerk of the latter Court knows that there have been no payments to the Clerk of the former Court.

5. Va Code § 58.1-1729 provides:

No clerk shall issue any writ, or docket any removed or appealed warrant, or any notice mentioned in this article until the tax imposed under this article[3] has been paid; however, his failure to collect the tax shall not invalidate the proceeding.

There are three things that the Clerk may not do until the tax is paid; (a) he may not issue a writ,[4] (b) he may not docket warrants which are removed or appealed (necessarily from the district court), or (c) he may not do something with (the sentence structure is less than clear, but perhaps "issue" or perhaps "docket") any notice "mentioned in this article." Note that the

---

[3]     This "article" is Article 6, and it consists of Va. Code §§ 58.1-1727, 58.1-1728, and 58.1-1729.

[4]     There is only one writ mentioned in § 58.1-1727, that being a writ of mandamus, so, if the only items addressed by the section are those described in it, the savings provision would not appear to apply generally to civil filings. However, I acknowledge that the term "writ" may encompass more than just a writ of mandamus.

phrase "failure to collect the tax" is limited to the "tax imposed under this article," so it is limited to the tax described in Va. Code § 58.1-1727. It does not address the other monies which the Clerk is obliged by statute to collect in conjunction with the filing of civil pleadings.

The three statutes of Title 58.1, Article 6, are internally inconsistent. Va. Code § 58.1-1727 clearly requires that the tax is "imposed upon . . . the commencement of every civil action in a court of record." If the tax is imposed on the commencement of the action, the plain reading of the language leads to the conclusion that the action is not commenced until the tax is collected from (hence, paid by) the litigant. To avoid the problem and confusion described in item 4, it is clear that the tax must be paid when the papers are first lodged with the Clerk, pursuant to Va. Code § 58.1-1728. However, although the first independent clause of Va. Code § 58.1-1729 imposes restrictions on what the Clerk may do without payment of the tax, it does not appear to address all of the things that a Clerk could do with respect to the suit. Moreover, the second independent clause contains a savings provision that the Clerk's "failure to collect the tax shall not invalidate the proceeding." That latter provision lends support to the proposition that the Clerk should collect the tax when the pleadings are filed because, otherwise, there would be no need for the legislature to have addressed (or mollified) the consequence of his failure to do so.

What did the General Assembly mean by providing that the Clerk's "failure to collect" the tax does not "invalidate the proceeding"? A reasonable conclusion is that the term "invalidate" relates to the Court's subject matter jurisdiction; that is, the litigant's failure to pay (or the Clerk's failure to collect) the tax would not render the filing a nullity, it would not strip the Court of the subject matter jurisdiction conferred on it pursuant to Va. Code § 8.01-654, and it would not prevent, without more, the case from proceeding. It might, as well, refer to a circumstance in which the litigant does not pay the writ tax but the issue is not raised by the adverse party, a circumstance in which an order entered by the Court would be voidable but not void.

In *Board of Supervisors of Fairfax County v. Board of Zoning Appeals of Fairfax County*, 271 Va. 336 (2006), the issue before the Court was the more fundamental matter of the untimely filing of a notice of appeal and whether that was a matter of subject matter jurisdiction. Because the time frame for the filing of the notice of appeal did not affect the legislative grant of jurisdiction for the Circuit Court to hear an appeal from the decision of the Board of Zoning Appeals, the Court concluded that the issue was not one of subject matter jurisdiction (which could be raised at any time, even for the first time on appeal). Still, in addressing prior decisions which turned on a determination of "jurisdiction" of a court to hear a case, the Court noted:

> In order for a court to have the power to adjudicate a particular case upon the merits, i.e., to have "active jurisdiction," several elements are needed. Those elements are subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a *res*; and "the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.

*Id.* at 333-34 (internal citations and footnote omitted). The clear implication of the Court's decision is that, had the issue of the untimely filing been raised in the trial court (and, therefore, not waived by the adverse party), the trial court would have been obliged to dismiss the case for lack of "active jurisdiction" based on the "other conditions."

In the instant case, the Court clearly has subject matter jurisdiction, territorial jurisdiction, and notice jurisdiction. Again, assuming that the statutes and Rule which specifically address habeas proceedings are not dispositive, the question is whether there are "other conditions . . . demanded by . . . statute law as prerequisites of the authority of the court to proceed to judgment," specifically the payment of the Fee, which calls into question the Court's "active jurisdiction."

The most troublesome case addressing a parallel issue is *Sours v. Virginia Bd. of Architects*, 30 Va. App. 313 (1999), a case which, surprisingly, neither party cited to the Court. It is surprising because the case is facially helpful to Lahey, so he might have wanted to argue its applicability, and, for the same reason, the Commonwealth might have wanted to distinguish it, on the off chance that the Court would find it in pursuing its independent research. That case involved an appeal of an administrative decision under the Virginia Administrative Process Act (the VAPA), Va. Code §§ 9-6.14:1 through 9-6.14:25. The Virginia Board of Architects, Professional Engineers, Land Surveyors, and Landscape Architects (the BOA) found wrong-doing by Sours, the County Surveyor. On appeal, Sours argued that the Circuit Court (1) erred in holding that timely payment of the statutory writ tax and clerk's fees was jurisdictional; (2) erred in holding that Rule 1:9 of the Rules of the Supreme Court did not apply to actions filed pursuant to Part 2A of the Rules; and (3) abused its discretion in denying his request for leave to pay the writ tax and clerk's fees.

Sours, who was represented by the County Attorney, gave timely notice of his appeal and timely filed it, but the Clerk did not charge a filing fee, apparently having concluded that, because Sours was represented by the County, there was no fee due. The BOA argued that its finding against Sours

was in his individual capacity and moved to dismiss the petition on the ground that the petition for appeal was not timely filed because appellant did not pay the statutory writ tax and clerk's fees. Sours argued on appeal that Rules 2:2[5] and 2A:4 did not require that the tax and fees be paid within the thirty-day appeal period.

At the time of the decision in this case, Rule 2A:4(a) provided as follows:

> Within 30 days after the filing of the notice of appeal, the appellant shall file his petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed. Such filing shall include all steps provided in Rules 2:2 and 2:3 to cause a copy of the petition to be served (as in the case of a bill of complaint in equity) on the agency secretary and on every other party.

Effective May 3, 2010, the Rule was amended to provide:

> Within 30 days after the filing of the notice of appeal, the appellant shall file a petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed. Such filing shall include *within such thirty-day period both the payment of all fees and* the taking of all steps provided in Rule 3:2, 3:3, and 3:4 to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party.

(Emphasis added to show the relevant amendment.)

Addressing the timing of the filing of the appeal, the panel of the Court of Appeals held that the thirty-day period was mandatory and jurisdictional. *Id.* at 318. In light of the subsequent holding in *Board of Supervisors of Fairfax County, supra,* one must assume that the term "jurisdictional" was not a reference to subject matter jurisdiction but to one of the "other conditions of fact [which] must exist [and] which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree." Moreover, the Court reaffirmed that the "the absence of an express provision in Part Two A of the Rules empowering the circuit court to extend the time limits prescribed in Rule 2A:4 is persuasive evidence that no such provision applies to petitions for circuit court review of administrative agency decisions." *Id.,* citing *Mayo v. Department of Commerce,* 4 Va. App. 520, 522, 524 (1987). However, the Court further noted that it had "never expressly considered whether payment of the writ tax and clerk's fees within the thirty-day period for filing the petition also is jurisdictional," *id.,* and concluded that it was not.

---

[5]     This is the predecessor to Rule 3:2, although, because of the elimination of the distinction between equity and law pleading, the current Rule is not identical to the earlier version in form.

Rule 2A:4(a) provides that the filing of a petition for appeal "shall include all steps provided in Rules 2:2 and 2:3 to cause a copy of the petition to be served" on the necessary parties. Rule 2:2 provides that "the statutory writ tax and clerk's fees shall be paid before the subpoena in chancery is issued."[6] Code §§ 58.1-1727 to 58.1-1729 contain more general provisions governing the payment of writ taxes. Such taxes are imposed, *inter alia*, "upon (i) the commencement of every action, in law or chancery, in a court of record, whether commenced by petition or notice, ejectment or attachment." Code § 58.1-1727.[7] Like Rule 2:2, Code § 58.1-1729 provides that "no clerk shall issue a writ, or docket any removed or appealed warrant, or any notice mentioned in this article until the tax imposed under this article has been paid," but it also provides that "[the clerk's] failure to collect the tax shall not invalidate the proceeding." Therefore, the Rules and related statutes contemplate that the clerk will not direct service of the petition until the writ tax and clerk's fees have been paid, but Code § 58.1-1729 provides expressly that the clerk's failure to collect the writ tax is not fatal to the proceeding. *See Davis v. McCall*, 133 Va. 487, 492, 113 S.E. 835, 837 (1922) (holding that the fact plaintiff did not pay the writ tax before the clerk issued writ "was a matter between the clerk and the commonwealth, and . . . [that payment] was not such a necessary condition precedent to the issuing of the writ as to entitle the defendant to set it up in bar of the action").[8] Nothing in the statutes or rules contravenes the application of this approach in VAPA appeals.

*Id.* at 318-19.

The decision of the Court (which would be different in light of the 2010 amendment to Rule 2A:4(a)) must be read in the light of the following observation by the two-judge majority on the panel:

[T]he purpose of the filing requirement in Rule 2A:4 is to keep the prevailing party apprised of the status of the case and

---

[6] Rule 3:2 contains identical language.

[7] My footnote, not the Court's: Curiously, although Va. Code § 2.2-4026 (formerly § 9-6.14:14) refers to a "review" to be "instituted in a court of competent jurisdiction," it defers to the Rules of the Supreme Court of Virginia to establish the mechanism. To the extent that the proceeding is, as indicated by Rule 2A:2, an appeal (rather than a civil action "commenced" in the Circuit Court), it is not clear that there is a writ tax required by § 58.1-1727.

[8] This case was decided long before the enactment of any of the relevant statutes and Rules governing the question before this Court.

allow him to assume the matter has ended if the non-prevailing party does not timely request appellate relief. Here, [Sours'] *non-payment of the writ tax and clerk's fees did not deprive [the Board] of notice of the appeal. Therefore, we hold that payment of the writ tax and clerk's fees within the thirty-day period for filing the petition for appeal is not mandatory and not jurisdictional.*

*Id.* at 320 (emphasis added; citation omitted). Although the Court acknowledged the provision (now) in Rule 3:5(e) that permits a litigant to wait a year before serving the adverse party, the Court nevertheless relied on the fact that, in the case before it, the adverse party was, in fact, served within the thirty-day period. In fact, it is not Rule 2A:4 that "keep[s] the prevailing party apprised of the status of the case." Rule 2A:4 did not then and does not now require even that the prevailing party be sent a copy of the petition; rather, it required that the petition be served in accordance with the Rules. However, Rule 2A:2 did then, and does now, require, in pertinent part, that "[a]ny party appealing from a . . . case decision shall file with the agency secretary, within 30 days . . . after service of the final order in the case decision, a notice of appeal signed by the appealing party or that party's counsel."

The holding in *Sours* is not controlling in this case. It involves an appeal (not an initial filing), it must be limited to its facts, and, insofar as it relates to cases not controlled by the Administrative Process Act, it is *dictum*. The narrow issue before the Court was defined in its statement of the question. "We have never expressly considered whether payment of the writ tax and clerk's fees within the thirty-day period for filing the petition [under Rule 2A:2] also is jurisdictional." *Id.* at 318. Despite the opinion's expansive language, the only issue before the Court was an appeal to a professional board under the VAPA. Indeed, Judge Bumgardner, concurring in the result, opined that the majority opinion "speaks more broadly than necessary." *Id.* at 322. Taking the decision as written, the basis for concluding that the payment of the writ tax and clerk's fees within the thirty-day period was not jurisdictional was premised on the fact that the "prevailing party [would otherwise] be apprised of the status of the case" and would otherwise have notice of the appeal.

In Lahey's case, there was no contemporary notice of the filing of a petition for a writ of habeas corpus, and there is nothing in the record to indicate that Lahey made an effort to "otherwise apprise" the Commonwealth of the status of the case. Hence, *Sours* cannot be binding because the express predicate for the holding is inapplicable on the facts of this case.

As I noted, Lahey did not serve the Commonwealth until ten months after the case had been lodged with the Clerk. Although that is in compliance with Rule 3:5(e), that Rule only applies when the action has

been commenced under Rule 3:2(a), so the applicability of Rule 3:5(e) depends on the determination of the issue at hand.

A second case not cited by either party is *Layfield v. Thornburg*, 58 Va. Cir. 233, 2002 Va. Cir. Lexis 39 (2002), a case nearly on point in support of Lahey's position. In that case, on the final day of the applicable statute of limitations, Layfield filed her complaint and paid an insufficient fee. The deputy clerk took the paperwork but neither date-stamped it nor otherwise marked it. Four days later, another deputy clerk notified Layfield's attorney of the deficiency, and the attorney submitted the balance of the filing fees the following day. Thornburg pleaded that the statute of limitations barred the plaintiff's filing. Relying on *Sours* and the language of Rule 3:3(a) (now, in substance, Rule 3:2(a)), the Court found that Layfield had timely filed. The Court correctly noted that:

> The Rule expressly provides that an action is commenced when the initial pleading is filed in the clerk's office. It does not say that an action is commenced when the initial pleading is filed in the clerk's office and the writ tax and fees have been paid. Obviously, if payment of the writ tax and fees were a prerequisite to commencement of the action, the Rule could have said so.

The Court's conclusion is troublesome in that, despite the language of the Rule, the General Assembly had prescribed the prerequisites for the filing of Layfield's initial pleading. Va. Code § 17.1-275(A)(13) (the statute governing payment of clerk's fees applicable to Layfield's motion for judgment in effect at the time) provided:

> In all actions at law, the clerk's fee chargeable to the plaintiff shall be fifty dollars in cases not exceeding $50,000, $100 in cases not exceeding $100,000, and $150 in cases exceeding $100,000; and in condemnation cases, a fee of twenty-five dollars, *to be paid by the plaintiff at the time of instituting the action*, this fee to be in lieu of any other fees. There shall be no fee charged for the filing of a cross-claim or setoff in any pending action. However, the fees prescribed by this subdivision shall be charged upon the filing of a counterclaim. *The fees prescribed above shall be collected upon the filing of papers for the commencement of civil actions*. This subdivision shall not be applicable to cases filed in the Supreme Court of Virginia.

(Emphasis added.)

Va. Code § 17.1-275(A)(13) (still in effect today) is not the only section which requires that the fees be collected "at the time of instituting

the action" or "upon the filing of paper for the commencement of civil actions." Paragraph (13)(a) of that section provides that one seeking court approval of a settlement under certain conditions must pay the fee "at the time of filing the petition." Va. Code § 17.1-278 requires that the fees described in that statute be "collected by the clerk at the time of filing." Other statutes merely provide that the fee, tax, assessment, or cost is to be collected by the Clerk, without specifying when. Recognizing the different treatments, Lahey argues that, "when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional." *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100 (2001).

However, other principles of statutory construction must also be considered. In interpreting a statute, courts must endeavor "to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." *Colbert v. Commonwealth*, 47 Va. App. 390, 394 (2006) (quoting *Jones v. Rhea*, 130 Va. 345, 372 (1921)). Moreover, Courts "have a duty, whenever possible, 'to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal'." *Oraee v. Breeding*, 270 Va. 488, 498 (2005) (quoting *Virginia Elec. & Power Co. v. Board of County Supervisors*, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)). In doing so, the Court is to "look to the whole body of [a statute] to determine the true intention of each part." *Id.* (quoting *McDaniel v. Commonwealth*, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)).

In this case, it is not a single statute that the Court must consider. It is a host of statutes, all directed to the obligations imposed on the Clerks of the Circuit Courts of this Commonwealth to fulfill their statutory duties to collect a writ tax, clerk's fees, costs, and other required assessments in connection with the filing of pleadings initiating civil litigation. With respect to Rule 3:3(a), it must be read in conjunction with the statutes (paramount to the Rule in any event) and in harmony with the statutory scheme. If the rationale of the Court of Appeals in *Sours* applies to all civil litigation filings, Clerks in the Commonwealth have an insurmountable task keeping track of what fees etc. must be, by statute, paid at the time of the filing of the case, what fees can be deferred because the statute does not contain the same specific language, to which Clerk the fees are to be paid, and devise a mechanism to ensure that all of the required fees are collected although some of the triggering events might not occur in some cases. The General Assembly cannot have intended to have imposed on a Constitutional Officer such a byzantine process when the simple mechanism is to collect what is necessary at the time a suit is filed.

B. *Regarding the Court's Authority To Extend the Time for Filing the Fee Based on Substantial Compliance and Rule 1:19*

First, Rule 1:19 does not apply in such a fashion as to permit a Court to alter a mandatory time frame prescribed by the Legislature. This Rule provides:

> All steps and procedures in the clerk's office touching the filing of pleadings and the maturing of suits or actions may be reviewed and corrected by the court.

The time allowed for filing pleadings may be extended by the Court in its discretion and such extension may be granted although the time fixed already has expired; but the time fixed for the filing of a motion challenging the venue shall in no case be extended except to the extent permitted by § 8.01-264.

With the possible exception of *Sours*, I can find no case in which this Rule has been applied to an initial filing of a complaint, for example, as a statute of limitations applies to it. Even in *Sours*, the petition at issue was an appeal of litigation which had begun in another forum, and, for the reasons stated, I do not believe the decision in *Sours* is controlling on the pending litigation. To interpret the Rule in that fashion would make the Court the arbiter of all statutes of limitations in clear derogation of the legislative authority of the General Assembly. Va. Code § 8.01-654(A)(2) could not be more clear in establishing the deadline by which Lahey's petition was due, and it is beyond this Court's authority to extend that time.

With respect to Lahey's argument that he has substantially complied with the requirements by submitting some (but not all) of the Fee, the language of Va. Code § 8.01-655 speaks to compliance with the requirements for completion of the prescribed form. It does not address substantial compliance as it relates to the time for filing the petition. Were the Court to engage in the exercise of determining a litigant's "substantial compliance" with a clearly prescribed time requirement or a clearly prescribed filing fee, it is difficult to know where one would draw the line from circuit to circuit or, for that matter, from judge to judge within a circuit. One judge might conclude that a delay of two days was too much, while another might conclude that ten days was entirely acceptable. One judge might conclude that payment of half of the Fee was substantial compliance, while another might require 75%. The result could only be injustice to some and a windfall to others, despite both having been negligent in observing the filing requirements.

Ms. Darron can prepare an order consistent with and making reference to this opinion letter dismissing Lahey's Petition.