COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges McClanahan and Haley
Argued at Salem, Virginia


JAMES WARREN COLBERT

OPINION BY
v.        Record No. 0154-05-3        JUDGE ELIZABETH A. McCLANAHAN
JANUARY 10, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Darren Shoen for appellant.

Kathleen B. Martin, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


James Warren Colbert was convicted on five charges of computer solicitation for sex

with a minor, in violation of Code § 18.2-374.3(B).  As part of his sentence, Colbert was

required to register as a sex offender, pursuant to Code § 9.1-902(A)(2).  On appeal, Colbert

contends that the trial court erred by imposing the registration requirement because his

solicitations were not directed to an actual minor, but rather to an undercover police officer

posing as a minor.  For the reasons that follow, we affirm the trial court.

## I.  BACKGROUND

On five separate occasions, Colbert used his computer to solicit sex with someone he

thought was a thirteen-year-old girl.  Colbert asked to engage in sexual intercourse or oral

sodomy on each occasion.  The person with whom Colbert corresponded on the Internet was, in

fact, an undercover police officer posing as a thirteen-year-old girl.  When the police confronted

him, Colbert admitted to committing the offenses and subsequently pled guilty to five charges of computer solicitation for sex with a minor, in violation of Code § 18.2-374.3(B).[1]

Upon Colbert's conviction of the five charges, the trial court sentenced Colbert to four years on each charge, with the sentences to run concurrently, suspended after serving six months in jail. The conditions of Colbert's suspended sentences were, *inter alia*, that he be placed on supervised probation for four years after his release from jail; have no unsupervised contact with any juvenile except his own children; have no access to the Internet except for business purposes; and register as a sex offender, pursuant to Code § 9.1-902(A)(2). Colbert objected to the sex offender registration requirement, which the court imposed.

## II. ANALYSIS

The sole issue presented on appeal is whether Colbert was required to register as a sex offender, pursuant to subsection (A)(2) of Code § 9.1-902, because his computer solicitations for sex were directed to an undercover police officer posing as a minor, rather than an actual minor. More specifically, even though Colbert was guilty of computer solicitation for sex with a minor under Code § 18.2-374.3(B) because he had reason to believe he was soliciting a thirteen-year-old girl, see Hix v. Commonwealth, 270 Va. 335, 619 S.E.2d 80 (2005) (discussed

---

[1] When Colbert committed the offenses in May 2004, Code § 18.2-374.3(B)(i) provided that a person eighteen years old or older was prohibited from using a computer to solicit "any person he [knew] or [had] reason to believe [was] a child less than 18 years of age" for any activity in violation of, among other offenses, Code § 18.2-370. Subsection (A) of Code § 18.2-370, in turn, prohibited an adult from taking indecent liberties with a child under fourteen years old, including, *inter alia*, a proposal to engage in an act of sexual intercourse or sodomy.

Code § 18.2-374.3(B) was later amended in 2004, moving the reference to Code § 18.2-370 from subsection (B)(i) to (B)(iv), a new subsection, which specifically references "any violation of subsection A of § 18.2-370." Code § 18.2-374.3(B)(iv). See 2004 Acts, cc. 414, 444. At the same time (prior to Colbert's conviction), Code § 9.1-902(A)(2), the sex offender registration statute, was amended to include a conviction under Code § 18.2-374.3(B)(iv) as a trigger to the registration requirement. See id.

- 2 -

*supra*), Colbert asserts that the offender registration requirement is only triggered where there was an actual minor victim, pursuant to the prefatory language of Code § 9.1-902(A)(2). This is a question of law that involves the interpretation and application of Code § 9.1-902(A)(2), and, thus, we review the trial court's judgment *de novo*. See Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) ("'We review the trial court's statutory interpretations and legal conclusions *de novo*.'" (quoting Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998))).

As always in such cases, we are guided by well-established principles of statutory construction. "'The proper course [in] all these cases is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.'" Jones v. Rhea, 130 Va. 345, 372, 107 S.E. 814, 823 (1921) (quoting United States v. Winn, 28 F. Cas. 733, 734 (D. Mass. 1838)); see also Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992) (explaining that statutory construction's main purpose is determining legislative intent, "'which, absent constitutional infirmity, must always prevail'" (quoting Bd. of Supervisors v. King Land Corp., 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989))).

Thus, while legislative intent "must be gathered from the words used, . . . unreasonable or absurd results must not be reached by too strict adherence to literal interpretation." Buzzard v. Commonwealth, 134 Va. 641, 653, 114 S.E. 664, 667 (1922). In addition, statutes *in pari materia* must be considered together in construing their various material provisions. Id. This requires that "[t]he literal meaning of separate provisions, if in apparent conflict[,] . . . must yield to a reasonable and fair interpretation to be gathered from the context, the subject matter and the reason and spirit of the law." Id. Similarly, "'[a] provision of a section of a statute ought not to receive a mere literal interpretation, when it would contravene the intention of the Legislature

- 3 -

apparent from the other sections and provisions thereof . . . .'" Pound v. Dep't of Game and Inland Fisheries, 40 Va. App. 59, 68, 577 S.E.2d 533, 537 (2003) (quoting Tabb v. Commonwealth, 98 Va. 47, 56-57, 34 S.E. 946, 949 (1900)). We do not isolate particular words or phrases but rather examine a statute in its entirety. Altice v. Roanoke County Dep't of Soc. Servs., 45 Va. App. 400, 406, 611 S.E.2d 628, 631 (2005). In doing so, we have a "duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." Virginia Elec. & Power Co. v. Bd. of County Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983) (citation omitted). Furthermore, where applicable, as here, we must keep in mind "the evil sought to be corrected by the legislature." Southern Ry. Co. v. Commonwealth, 205 Va. 114, 117, 135 S.E.2d 160, 164 (1964).

We must begin our analysis with the statutory scheme under which Colbert was required to register as a sex offender. See Sex Offender and Crimes Against Minors Registry Act (Code §§ 9.1-900 to 9.1-920). The express purpose of the Act is "to assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat sex offenders and to protect children from becoming victims of criminal offenders by helping to prevent such individuals from being allowed to work directly with children." Code § 9.1-900. The Act also expressly states that it shall be liberally construed to effect its stated purpose. Code § 9.1-920.[2]

To provide such assistance, the Act creates a registry in the Commonwealth that requires registration with the Virginia State Police by those convicted of certain sex-related crimes (against both minors and adults) and certain other non-sexual crimes specifically targeted against

---

[2] This approach to construction of the Act is consistent with this Court's holding that the Act is regulatory, not penal, in its implementation of the remedial purpose of "[p]rotecting the public and preventing crimes" by "'helping law enforcement agencies keep tabs on [sex] offenders [among others].'" Kitze v. Commonwealth, 23 Va. App. 213, 217, 475 S.E.2d 830, 832 (1996) (quoting Artway v. New Jersey, 81 F.3d 1235, 1265 (3d Cir. 1996)).

minors, or those otherwise physically helpless or mentally incapacitated. All of these criminal offenses—the violation or attempted violation of which trigger the registration requirement upon conviction—are listed under Code § 9.1-902, consisting of non-violent (both sexual and non-sexual) offenses under subsections (A)(1), (2) and (3); "sexually violent offenses" under subsection (A)(4), as defined therein; and murder, where the victim is a minor, under subsection (A)(5).[3]

Code § 18.2-374.3(B)(iv), under which Colbert was convicted, is listed under subsection (A)(2) of Code § 9.1-902, which provides as follows:

> A. For purposes of this chapter:
>
> "*Offense for which registration is required*" means:
>
> \*    \*    \*    \*    \*    \*    \*
>
> 2. Where the victim is a minor or is physically helpless or mentally incapacitated as defined in § 18.2-67.10, a violation or attempted violation of subsection A of § 18.2-47, clause (i) or (iii) of § 18.2-48, § 18.2-67.4, subsection C of § 18.2-67.5, 18.2-361, 18.2-366, or clause (iv) of subsection B of § 18.2-374.3; . . . .

(Emphasis in original.)

Colbert points to the prefatory language in this subsection—"[w]here the victim is a minor"—in support of his contention that he is not subject to the Act's offender registration requirement. Colbert argues that, based on the plain meaning of that language, there had to be an actual minor victim in order for the registration requirement to have applied to him upon his

---

[3] The significance of these distinctions is that those convicted of offenses classified as "sexually violent" under Code § 9.1-902 are required to register as a sex offender for life, while all other offenders subject to the Act are required to register for a period of ten years. See Code § 9.1-908. In terms of classification, several sex-related offenses are classified as "sexually violent" upon a single conviction, e.g., Code § 18.2-61 (rape) (all of which offenses are listed under paragraph 1 of Code § 9.1-902's definition of "sexually violent offense"). On the other hand, several other sexual offenses listed under subsections (A) and (B) of Code § 9.1-902 are deemed "sexually violent" upon multiple convictions of those offenses (all of which are listed under paragraph 2 of Code § 9.1-902's definition of "sexually violent offense").

conviction. Thus, even though Colbert believed that the undercover law-enforcement officer whom he solicited was a thirteen-year-old girl, and, in doing so, committed five separate criminal offenses of computer solicitation for sex with a minor, in violation of Code § 18.2-374.3(B)(iv), Colbert nevertheless contends that he is exempt from the Act. We disagree.

Upon a review of Code § 9.1-902(A)(2)'s prefatory language in its proper context, not in isolation as Colbert would have us view it, and in light of the Act's explicit statement of legislative purpose, we find that Colbert's interpretation of that language is without merit. First, under subsection (A)(1) of Code § 9.1-902, all of the listed substantive offenses are non-violent sexual offenses, some of which pertain only to offenses against minors, e.g., Code § 18.2-63 (carnal knowledge of a child between thirteen and fifteen years old), while the other offenses are non-specific in terms of the age of the victim, e.g., Code § 18.2-90 (unauthorized entry in a dwelling house with intent to commit rape). In proscribing sex-related criminal conduct, each of the offenses listed under this subsection falls squarely within the scope of the Act. In contrast, the non-violent offenses listed under subsection (A)(2) consist of both sexual and non-sexual offenses. Only Code §§ 18.2-374.3(B)(iv) and 18.2-48(iii) (kidnapping a child under the age of sixteen for the purpose of concubinage or prostitution) are limited, by their own terms, to offenses against minors. The other six offenses are non-specific in terms of the victim's age. Two of these are kidnapping offenses: Code §§ 18.2-47(A) (kidnapping), and 18.2-48(i) (kidnapping with the intent to extort money or pecuniary benefit). The other four are sexual offenses: Code §§ 18.2-67.4 (sexual battery), 18.2-67.5(C) (attempted sexual battery), 18.2-361(crimes against nature), and 18.2-366 (adultery and fornication by persons forbidden to marry, and incest) (all of which are non-specific in terms of the victim's age, except for the degree of punishment in the case of incest, under Code § 18.2-366). And of these sexual offenses, sexual battery and attempted sexual battery are also listed offenses under subsection

(A)(1) of Code § 9.1-902. There, the registration requirement is made applicable to those convicted of either of these two offenses where the offense was committed against an adult, but only upon a third or subsequent conviction of either offense.[4] The difference, therefore, in the application of subsections (A)(1) and (A)(2) relative to these two sexual offenses is the classification of the targeted victims; and the fact that, unlike subsection (A)(1), the registration requirement is triggered under subsection (A)(2) upon a single conviction of either offense.

Thus, in keeping with the scope of the Act[5] and reflecting the Act's varying applications of the registration requirement according to the targeted victims of the particular offenses, the offender registration requirement for convictions of offenses listed under Code § 9.1-902(A)(2) is effectively limited to offenses against minors, or otherwise those who are physically helpless or mentally incapacitated, by the prefatory language of this subsection.

There is no indication, however, in Code § 9.1-902, or any other part of the Act, that the General Assembly intended by the prefatory language of subsection (A)(2) to modify the elements of the substantive offenses listed in this subsection for purposes of triggering the registration requirement. That language simply implements the Act's delineation between offenses against adults (addressed elsewhere in Code § 9.1-902) and offenses specifically targeted against minors, or otherwise those who are physically helpless or mentally

---

[4] Furthermore, where the targeted victims are those specified under subsection (A)(2), these two offenses, like most of the other sexual offenses listed under subsection (A)(2), are deemed to be "sexually violent offense[s]" under Code § 9.1-902 upon two or more convictions of either offense, or any of a number of other sexual offenses listed under paragraph 2 of the definition of "sexually violent offense."

[5] If not for the limiting prefatory language of subsection (A)(2), the registration requirement would apply to the kidnapping of adults for two of the three kidnapping offenses listed under this subsection, i.e., Code §§ 18.2-47(A) and 18.2-48(i), which would clearly exceed the scope of the Act, with these being non-sexual offenses against adults.

incapacitated, for separate treatment under the Act.[6]  Accordingly, we conclude that the Act's

offender registration requirement was clearly applicable to Colbert upon his conviction under

Code § 18.2-374.3(B)(iv), being one of subsection (A)(2)'s listed offenses against minors—

regardless of the fact that there was no actual minor victim, as that was not a necessary element

of the offense.[7]  See Hix, 270 Va. 335, 619 S.E.2d 80 (affirming defendant's conviction of

computer solicitation for sex with a minor, in absence of an actual minor victim, where

defendant believed he was soliciting a thirteen-year-old girl, but was in reality soliciting an

undercover police officer); Brooker v. Commonwealth, 41 Va. App. 609, 587 S.E.2d 732 (2003)

(also affirming defendant's conviction for same crime arising out of similar circumstances,

where defendant believed he was soliciting a twelve-year-old girl).

Our construction of Code § 9.1-902(A)(2) in this case is consistent with the Act's

manifest remedial purpose of protecting children from sex offenders.[8]  "Criminal solicitation

involves the attempt of the accused to incite another to commit a criminal offense."  Branche v.

Commonwealth, 25 Va. App. 480, 490, 489 S.E.2d 692, 697 (1997).  The solicitation offense

presented here, computer solicitation for sex with a minor, as a listed offense, falls expressly

within the evil contemplated by the Act; and therefore those who have been convicted of the

---

[6] As discussed above, not only does the Act in various instances treat different offenses differently in its application of the registration requirement, in instances of sexual battery and attempted sexual battery, for example, different treatment is applied even to the same offenses, depending upon the classification of the targeted victims.

[7] See *supra* footnote 1 (explaining, *inter alia*, that Code § 18.2-374.3(B)(iv) is violated where defendant either knew or had "reason to believe" that he was soliciting sex with a minor).

[8] In this regard, the United States Supreme Court recently observed that "[s]ex offenders are a serious threat in this Nation.  The victims of sex assault are most often juveniles, and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sex assault."  Connecticut v. Doe, 538 U.S. 1, 4 (2003) (citation and internal quotation marks omitted).  Consequently, every state "has responded to these facts by enacting a [statutory scheme] designed to protect its communities from sex offenders and to help apprehend repeat sex offenders."  Id.

offense are among the offenders subject to the Act's registration requirement, which seeks to "correct [the] evil"—sex offenses targeted against children (among other offenses and victims addressed under the Act). Baldwin v. Commonwealth, 203 Va. 570, 574, 125 S.E.2d 858, 861 (1962) (construing Uniform Narcotic Drug Act in light of Act's purpose "to correct an evil—the illegal traffic in narcotics"). As such, it is of no moment that in the commission of this sexual solicitation offense the defendant's target is in reality an undercover law-enforcement officer, "an extraneous circumstance unknown to [the defendant] and beyond his control." Hix, 270 Va. at 346, 619 S.E.2d at 86. "'Whether the targeted victim is a child or an undercover agent, the defendant's conduct, intent, culpability, and dangerousness are all exactly the same.'" Id. (quoting In re Doe, 855 A.2d 1100, 1106 (D.C. 2004)). See generally, Wayne R. LaFave, Criminal Law § 6.1, at 528 (3d ed. 2000) (explaining reasons for criminalizing solicitation, with the paramount reason being that it "permits the criminal justice process to deal with individuals who have indicated their dangerousness").

Furthermore, it would clearly lead to an absurd result were the Act's registration requirement not extended to a defendant such as Colbert, upon a conviction of computer solicitation for sex with a minor, based solely upon a fortuity beyond his control—that the one receiving his sexual solicitations was actually an adult, despite his intent to target a child. In that regard, he is indistinguishable from one committing the same offense whose sexual solicitations were actually received by a minor. In the words of Hix, they are "exactly the same." Hix, 270 Va. at 346, 619 S.E.2d at 86 (citation and internal quotation marks omitted). Yet, the Act's registration requirement would apply to one, but not to the other, under Colbert's interpretation of the Act. See Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004) (noting that "our case law uses the phrase 'absurd result' to describe situations in which the law would be internally inconsistent").

- 9 -

Hix, in fact, presents another such example. In Hix, the Supreme Court affirmed Hix's convictions for both computer solicitation for sex with a minor and attempted indecent liberties with a minor, where, as here, Hix believed he was soliciting sex with a thirteen-year-girl, but was actually communicating via the Internet with an undercover agent of the Virginia State Police. In doing so, the Court rejected the defense of impossibility, which Hix raised in defense to the attempt crime.[9] The Court explained that "[b]y definition, the crime of attempted indecent liberties required only that Hix make certain proposals or invitations to the [targeted] victim." Hix, 270 Va. at 347, 619 S.E.2d at 87. Thus, the Court concluded, "[t]he absence of the actual child in [the] case [had] no bearing on the crime of attempt." Id.; see also Bloom v. Commonwealth, 34 Va. App. 364, 372, 542 S.E.2d 18, 21-22, aff'd, 262 Va. 814, 554 S.E.2d 84 (2001) (same holding regarding crime of attempted indecent liberties in nearly identical case). See generally Audrey Rogers, New Technology, Old Defenses: Internet Sting Operations and Attempt Liability, 38 U. Rich. L. Rev. 477 (2004).

As Hix makes clear, use of a computer to solicit sex with one believed to be a minor, though in reality there was no minor, constitutes a violation of both Code § 18.2-374.3(B)(iv) and Code § 18.2-370. It would be inconsistent, therefore, to impose the offender registration requirement on one convicted of attempted indecent liberties with a minor, in the absence of an actual minor victim, and yet not impose the registration requirement on one convicted of

---

[9] As the Supreme Court explained in Hix,

> "[l]egal impossibility occurs when a defendant's actions, even if fully carried out exactly as he intends, would not constitute a crime. Factual impossibility occurs when the actions intended by a defendant are proscribed by the criminal law, but a circumstance or fact unknown to the defendant prevents him from bringing about the intended result."

Hix, 270 Va. at 342, 619 S.E.2d at 84 (quoting Parham v. Commonwealth, 2 Va. App. 633, 636, 347 S.E.2d 172, 173-74 (1986)).

computer solicitation for sex with a minor, where there also was no actual minor victim.[10] The prefatory language in Code § 9.1-902(A)(2) at issue here does not dictate, and should not be construed to yield, such a result. "'[W]here a particular construction of a statute will result in an absurdity, some other reasonable construction which will not produce the absurdity will be found.'" Auer v. Commonwealth, 46 Va. App. 637, 651, 621 S.E.2d 140, 147 (2005) (quoting Miller v. Commonwealth, 180 Va. 36, 41, 21 S.E.2d 721, 723 (1942)).

Finally, we note that courts in at least two other states have addressed the issue here presented on essentially the same facts, and held in each case that the defendant was required to register as a sex offender under the state's statutory scheme for sex offender registration. See Spivey v State, 619 S.E.2d 346 (Ga. App. 2005); and Michigan v. Meyers, 649 N.W.2d 123 (Mich. App. 2002). The computer solicitations in both Spivey and Meyers were charged as attempt crimes (like Hix as to the attempted indecent liberties offense). Spivey, 619 S.E.2d at 348; Meyers, 649 N.W.2d at 125. As such, the court's statutory analysis in each case focused in part on rejecting the defendant's defense of impossibility, which Colbert does not assert.[11] The courts in Spivey and Meyers concluded that when the defendant's intent was to solicit sex with a minor, it would be contrary to clear legislative intent to hold the defendant exempt from the sex offender registration requirement. Spivey, 619 S.E.2d at 352; Meyers, 649 N.W.2d at 132.

---

[10] Similar inconsistencies would also result in relation to a number of other listed offenses under Code § 9.1-902, committed as attempt crimes, where there was no actual victim by virtue of the fact that the substantive offense was not completed, but rather only a "slight act done in furtherance of [the defendant's] intent" to commit the crime. Fortune v. Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 28 (1992) (citation omitted) (explaining that such is all that is required for an overt act in an attempt crime where intent has been shown).

[11] In rejecting the impossibility defense, both courts applied the same reasoning relative to the sex offender registration statutes as did our Supreme Court in Hix. The holding in all three cases was that while legal impossibility was a defense, factual impossibility (as in the instant case) was not a valid defense.

## III. CONCLUSION

Accordingly, we affirm the trial court's decision requiring Colbert, upon his conviction under Code § 18.2-374.3(B)(iv), to register as a sex offender pursuant to Code § 9.1-902(A)(2) as a condition of his suspended sentences.

Affirmed.