COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


RICHARD CLAYTON

MEMORANDUM OPINION[*] BY
v.      Record No. 1847-10-4          JUDGE ROBERT J. HUMPHREYS
FEBRUARY 8, 2011
STATE BUILDING CODE TECHNICAL REVIEW BOARD


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge

Richard N. Clayton, *pro se*.

Steven P. Jack, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Richard Clayton ("Clayton") appeals an order entered by the Circuit Court for the City of

Alexandria ("circuit court"), upholding the State Building Code Technical Review Board's

("Review Board") decision that the absence of firestops in Clayton's condominium building does

not violate the Virginia Maintenance Code ("VMC").  For the following reasons, we disagree

with Clayton and affirm the circuit court.

I.  ANALYSIS

Clayton contends on appeal that the circuit court erred in concluding the Review Board

"committed no error of law and properly interpreted its regulations" when it ruled that the

absence of firestops in Clayton's condominium building does not violate the VMC.  Specifically,

Clayton argues the Review Board "improperly relied solely on section 105.3 of the VMC and

disregarded sections 105.1 and 703.1 of the VMC, which mandate installation of fire stops

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

because they were required at the time of construction and their absence creates an unsafe condition." We disagree with the legal position advanced by Clayton.

"On appeal of an agency decision, 'the sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind necessarily would come to a different conclusion.'" Avalon Assisted Living Facilities v. Zager, 39 Va. App. 484, 499-500, 574 S.E.2d 298, 305 (2002) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)). "In making this determination, 'the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.'" Id. "[W]here the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Johnston-Willis, 6 Va. App. at 244, 369 S.E.2d at 8.

> "The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function."

Virginia Alcoholic Beverage Control Com. v. York Street Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979) (alteration in original) (quoting Schmidt v. Board of Adjustment of City of Newark, 88 A.2d 607, 615-16 (N.J. 1952)). "Whether the issue is one of law or fact or substantial evidence, we are directed to take account of the role for which agencies are created and public policy as evidenced by the basic laws under which they operate." Johnston-Willis, 6 Va. App. at 244, 369 S.E.2d at 8 (citation omitted).

Clayton's appeal rests largely upon principles associated with statutory interpretation, which is a question of law that we review *de novo*. Grafmuller v. Commonwealth, 57 Va. App. 58, 61, 698 S.E.2d 276, 278 (2010). "'[W]e determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result.'" Id. (quoting Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009)). "[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). "If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." Id. "The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998).

As the Review Board correctly notes, the Uniform Statewide Building Code ("USBC") is divided into three distinct parts. Part I pertains specifically to the construction of new buildings and is referred to as the Virginia Construction Code. See 13 VAC 5-63-10(A). Part II pertains to the rehabilitation of existing buildings and is referred to as the Virginia Rehabilitation Code. See 13 VAC 5-63-400(A). Part III pertains to the maintenance of existing structures and is referred to as the VMC.[1] See 13 VAC 5-63-450(A). These distinct parts "must be considered together in construing their various material provisions." Colbert v. Commonwealth, 47 Va. App. 390, 395, 624 S.E.2d 108, 110 (2006). "This requires that 'the literal meaning of separate provisions, if in apparent conflict[,] . . . must yield to a reasonable and fair interpretation

---

[1] According to the Review Board, the VMC contemplates three distinct types of existing structures: buildings constructed where no codes were in effect at the time of construction; buildings constructed where a local building code was in effect at the time of construction; and buildings that were subject to the USBC at the time of construction. Clayton's condominium falls into the category of a structure constructed under a local building code in effect at the time of construction.

- 3 -

to be gathered from the context, the subject matter and the reason and spirit of the law.'" Id. at 395, 624 S.E.2d at 110-11 (alteration in original) (quoting Buzzard v. Commonwealth, 134 Va. 641, 653, 114 S.E. 664, 667 (1922)). In other words, "we have a 'duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" Id. at 395, 624 S.E.2d at 111 (quoting Virginia Elec. & Power Co. v. Bd. of County Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)).

Several sections of the VMC are especially pertinent to this appeal. Section 103.1 of the VMC provides in relevant part, "[t]his code prescribes regulations for the maintenance of all existing buildings and structures and associated equipment, including regulations for unsafe buildings and structures." 13 VAC 5-63-470(A). To that end, Section 103.2 states,

> Buildings and structures shall be maintained and kept in good repair in accordance with the requirements of this code and when applicable in accordance with the USBC under which such building or structure was constructed. *No provision of this code shall require alterations to be made to an existing building or structure* or to equipment *unless conditions are present* which meet the definition of an *unsafe structure or a structure unfit for human occupancy.*

13 VAC 5-63-470(B) (emphases added). In accordance with Section 105.1, "[a]ll conditions causing such structures to be classified as unsafe or unfit for human occupancy shall be remedied or as an alternative to correcting such conditions, the structure may be vacated and secured against public entry or razed and removed." 13 VAC 5-63-490(A). A structure "unfit for human occupancy" is defined in the VMC as

> [a]n existing structure determined by the code official to be dangerous to the health, safety and welfare of the occupants of the structure or the public because (i) of the degree to which the structure is in disrepair or lacks maintenance, ventilation, illumination, sanitary or heating facilities or other essential equipment or (ii) the required plumbing and sanitary facilities are inoperable.

13 VAC 5-63-510(B).  An "unsafe structure" is

> [a]n existing structure (i) determined by the code official to be dangerous to the health, safety and welfare of the occupants of the structure or the public, (ii) that contains unsafe equipment, or (iii) that is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation that partial or complete collapse is likely.

Id.

> When the code official finds a condition that constitutes a serious and dangerous hazard to life or health in a building or structure constructed *prior to* the initial edition of the USBC and when that condition is of a cause *other than* improper maintenance or failure to comply with state or local building codes that were in effect when the building or structure was constructed, then the code official shall be permitted to order those minimum changes to the design or construction of the building or structure to remedy the condition.

13 VAC 5-63-490(C) (emphasis added).  Thus, although the VMC "[i]n accordance with Section 103.2 . . . does not generally provide for requiring the retrofitting of any building or structure," 13 VAC 5-63-490(D), Section 105.3.1 acknowledges that "conditions may exist in buildings or structures constructed prior to the initial edition of the USBC because of faulty design or equipment that constitute a danger to life or health or a serious hazard," 13 VAC 5-63-490(D). However, Section 105.3.1 also provides,

> Any changes to the design or construction required by the code official under this section shall be only to remedy the *serious hazard or danger to life or health* and such changes shall not be required to fully comply with the requirements of the Virginia Construction Code applicable to newly constructed buildings or structures.

13 VAC 5-63-490(D) (emphasis added).

Upon a review of these provisions, the Review Board concluded that the lack of compliance with the operative building code at the time the condominiums were built "may not

be treated as [a] violation[] of the VMC."[2] The Review Board found that "the lack of firestopping is not a condition which in and of itself rises to the level of meeting the definition of an unsafe structure in [13 VAC 5-63-510(B)]." The Review Board noted that, "accepted practices at the time of construction of the building may have permitted the use of alternative materials or methods of construction negating or minimizing the need for firestopping." The Review Board further observed, "even the current USBC for the construction of new buildings does not contain provisions specifically for preventing the migration of cigarette smoke in buildings." In fact, all final inspections and approvals under the operative building code were completed at the time of construction and a certificate of occupancy was issued for the condominiums in August 1976.[3] The Review Board, thus, concluded that because the lack of firestops in the condominiums does not render the condominiums unsafe for human occupancy or otherwise dangerous to the life and health of its occupants, the insertion of firestops is not mandated by the VMC. The Review Board's findings and conclusions are in keeping with the "experience and specialized competence of the agency," and they are in accord with the basic law under which the agency has acted." See Johnston-Willis, 6 Va. App. at 244, 369 S.E.2d at 8. We are, thus, bound by the Review Board's decision. In other words, because the Review

---

[2] The parties do not dispute the fact that the lack of firestopping in the condominiums resulted in a violation of the building code under which they were built. The parties merely disagree as to the appropriate remedy.

[3] According to the local department, "any code violations relating to construction would have been required to be reported within two years after the issuance of the certificate of occupancy." See 13 VAC 5-63-150(C). Because "no such violations were noted," the local department found that "the statute of limitations has expired."

Board's findings are not arbitrary and capricious, and because the VMC by its plain wording supports the Review Board's conclusions, we may not disturb its decision on appeal.

Indeed, Clayton's suggestion that the condominiums are "unsafe" and "unfit for human occupancy" is untenable under the VMC's articulated definitions of those terms. The condominiums were not in disrepair, they contained all necessary and functioning utilities, they were structurally sound, and they did not impose any particularized danger to the occupants or the public. In fact, the building has existed in this current condition since it was built more than 35 years ago. Thus, contrary to Clayton's assertion, the Review Board did not err in finding the condominiums do not meet the definition of "unsafe" or "unfit for human occupancy" under the plain language of the VMC. It follows that, because the condominiums are not, in fact, "unsafe" or "unfit for human occupancy," the Review Board was correct in finding that the lack of firestopping does not violate the VMC, or that retrofitting is not required under the VMC. See 13 VAC 5-63-490. The circuit court did not, therefore, abuse its discretion in upholding the decision of the Review Board.

Clayton, nevertheless, disagrees with the ultimate conclusions reached by the Review Board, arguing instead that the delineated sections of the VMC support his assertion that the lack of firestopping in his building is a clear violation of the VMC and, as such, the installation of firestopping is mandated by the VMC. Fundamentally, Clayton disagrees with the Review Board's finding that the lack of firestopping does not render the condominiums "unsafe" or "unfit for human occupancy." Clayton suggests that the lack of firestopping is a fire hazard under Section 703.1 of the VMC, which provides that, "[t]he required fire resistance rating of fire-resistance-rated walls, fire stops, shaft enclosures, partitions and floors shall be

maintained."[4]  Clayton interprets the phrase "shall be maintained" in Section 703.1 essentially as meaning "shall be brought into compliance with the original building code."  In support of his assertion, Clayton cites the Virginia Public Building Safety Regulations ("VPBSR"), which provides that "an existing building is required to be maintained in accordance with the building code that was in effect at the time the building was constructed and with the requirements of any applicable maintenance provisions of Virginia's fire code."  However, the VPBSR also states,

> This means that many conditions identified in an older building that may not be in full compliance with today's codes are acceptable because these conditions were okay at the time the building was constructed.  As long as the use of the building is not changed, the building owner is not legally required to retrofit the building to meet the current code.

VPBSR, page ii.

For all of these reasons, we hold that the Review Board did not act arbitrarily or capriciously in finding that retrofitting of firestops in Clayton's condominium is not required as a matter of law.  We, thus, affirm the circuit court.

## II.  CONCLUSION

For the foregoing reasons, we conclude the circuit court did not abuse its discretion in finding that the Review Board "committed no error of law and properly interpreted its regulations," in upholding the Review Board's decision.  We, thus, affirm the circuit court.[5]

Affirmed.

---

[4] The VMC actually ends at Chapter 6 and does not include a Chapter 7.  However, the VMC adopts by reference the International Property Maintenance Code of 2006, which includes Chapter 7 "Fire Safety Requirements."  Section 703.1 of the VMC, thus, refers to Chapter 7 of the International Property Maintenance Code of 2006.  See 13 VAC 5-63 Title Doc. Inc. by Ref. (2010).

[5] We deny Clayton his request for attorney's fees.  See Code § 2.2-4030(A) ("In any civil case . . . in which any person contests any agency action, such person shall be entitled to recover from that agency . . . reasonable costs and attorneys' fees *if such person substantially prevails on the merits* of the case and the agency's position is not substantially justified . . . . (emphasis added)).