COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Chaney and Senior Judge Haley
Argued by videoconference

DARREN THORNTON, SOMETIMES KNOWN AS
 DARREN LAMAR THORNTON

                                                                OPINION BY
v.      Record No. 0652-22-2                      JUDGE VERNIDA R. CHANEY
                                                                AUGUST 22, 2023
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Susan E. Allen (The Law Office of Susan E. Allen, Attorney at Law,
PLLC, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Darren Thornton appeals his felony conviction for soliciting prostitution from a minor.

Thornton contends that the trial court erred in finding that he (i) completed the required element

of "a substantial act in furtherance" of an offer for prostitution and (ii) solicited prostitution from

a minor. For the following reasons, this Court affirms the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, we state the facts 'in the light

most favorable to the Commonwealth, the prevailing party at trial.'" *Aley v. Commonwealth*,

75 Va. App. 54, 57 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On November 19, 2020, Thornton responded to an online advertisement for sexual

services by a "female escort" called "Emma." The ad stated that Emma was 19 years old. The

ad included a menu of sexual services and indicated that "[g]irlfriend experience (GFE)" was

available for an extra fee.  The ad also stated, "LOLLIPOPS and candy canes . . . , ill b ur sweet bb girl."

At 3:45 p.m., Thornton initiated a conversation with "Emma" by sending a text message to her advertised phone number.  After "Emma" texted in response that she was available and located in an apartment in South Richmond, Thornton replied, "I can be there around 5:30."  When asked, "what are you looking for so I can give you the price," Thornton answered, "GFE hour."[1]  "Emma" responded with a price of $80, including fellatio.  Thornton then inquired, "You smoke?"  "Emma" responded, "I do.  [B]ring me some and I'll take some $ off."  Thornton replied, "Okay I will bring some."

At 4:02 p.m., "Emma" sent Thornton a text message asking, "Can you bring me a beer? I'm too young to buy it."  Then "Emma" and Thornton exchanged the following text messages about "Emma's" age:

Emma:        I'm almost 18 and can't buy it.

Thornton:    You not 18?

Emma:        [A]lmost am, I will be soon.

Thornton:    What is soon?

Emma:        February.

Thornton:    I will need a pic!!!  I don't do under 18.

Emma:        I mean I get what you're saying, but it's just
             between us.

Thornton:    How did you get an apartment under 18?
             Your ad says 19.

---

[1] Most of the text messages quoted in this opinion are quoted from the trial transcript and do not include many of the abbreviations shown in the "chat log" in Commonwealth's Exhibit 2.

> Emma: I stay at a friend's place who is out of town working. The site doesn't allow ads younger.

After this discussion and some sexual banter, "Emma" texted, "[Y]ou coming or what? I'm free right now." Thornton replied, "Okay I will come through to check you out." A couple of minutes later, "Emma" texted that she would provide her address if Thornton was really coming. Thornton replied, "I am coming." Then "Emma" asked whether Thornton wanted to have sex without using a condom—one of her advertised services. Thornton replied that he would bring condoms. Then "Emma" provided her address, and they agreed to meet around 5:30 p.m.

At 4:16 p.m., "Emma" texted Thornton an address on Meadowdale Boulevard in Chesterfield County. Thornton replied that he would "stop by the store and stuff" and "should be there by 5:30." Thornton added, "I am serious about coming with weed and beer too[.] It takes a little time." At 4:49 p.m., Thornton texted, "[O]n the way, should be there in 20 minutes." At 5:15 p.m., Thornton texted, "Here." A few seconds later, "Emma" responded, "[C]ome to the door, I'm ready for you."

After Thornton parked and texted "Emma" that he had arrived at her address, the police blocked his car with police vehicles to prevent him from leaving. The police arrested and searched Thornton after he stepped out of his car. Thornton was holding a beer in a brown paper bag. Thornton also had over $160 in cash, a cell phone, several condoms, cigarettes, and a pouch containing a leafy green substance.

Unbeknownst to Thornton, his text communications with "Emma" were actually with Detective Joanna Hartsook, who was posing as an underage minor prostitute in a sting operation with the Chesterfield County Police Department's Special Victims Unit and Vice and Narcotics Section. Detective Hartsook initiated the sting operation by placing "Emma's" ad on a known prostitution website. The detective testified that "BB girl," as used in the online ad, is slang for "baby girl" and the word "LOLLIPOPS" in capital letters identified "Emma" as a minor. The

detective also explained that "Girlfriend experience" or "GFE" is "a transactional sex act between two people that includes kissing or cuddling."

After Thornton was advised of his *Miranda v. Arizona*, 384 U.S. 436 (1966), rights, he agreed to speak with Detectives Frazier and Kay. Thornton admitted sending text messages to "Emma," but he claimed that he was acting as a counselor for troubled young women. Thornton contended that his reason for meeting such young women was to try to convince them not to participate in "human trafficking." Thornton claimed that he engaged in "sexual talk" with such women to connect with them and keep them interested in meeting with him. Thornton told the detectives that he should not have continued to "Emma's" location when he became aware that she was 17 years old. Although Thornton claimed that he only intended to get to know "Emma," he also said that he was open to developing a sexual relationship with her.

At the close of the Commonwealth's case-in-chief, Thornton moved to strike the evidence due to the Commonwealth's alleged failure to prove that he committed any substantial act in furtherance of an offer of money in exchange for sex. The trial court initially took Thornton's motion to strike under advisement. Thornton presented no evidence and renewed his motion to strike. The trial court found that the evidence was sufficient to prove the requisite "substantial act in furtherance" and denied the renewed motion to strike. Following closing arguments, the trial court pronounced that Thornton was guilty as charged of solicitation of prostitution from a minor, age 16 or older, in violation of Code § 18.2-346.

Thornton moved the trial court to reconsider and vacate its finding of guilt because the evidence allegedly failed to prove beyond a reasonable doubt that Thornton (1) did a substantial act in furtherance of an offer of money in exchange for sex and (2) solicited prostitution from a minor. Following a hearing, the trial court denied Thornton's motion to reconsider. The trial

court sentenced Thornton to incarceration for five years, with all five years suspended. This appeal followed.

ANALYSIS

A. *Standard of Review*

Thornton contends that the evidence is insufficient to sustain his conviction for solicitation of a minor in violation of former Code § 18.2-346(B) because the evidence is insufficient to support the trial court's findings that he (1) committed a substantial act in furtherance of an offer of money for sex and (2) solicited prostitution from a minor.[2] On appellate review of the sufficiency of the evidence to support a criminal conviction, this Court "reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). At issue on appeal is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). The circuit court's judgment will be affirmed "unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021) (quoting *Austin v. Commonwealth*, 60 Va. App. 60, 65 (2012)); *see also* Code § 8.01-680.

To the extent that our sufficiency analysis involves issues of statutory construction, our appellate review is de novo. *See Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015). As a penal statute, former Code § 18.2-346(B) "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." *Bakran v.*

---

[2] Effective July 1, 2021, the General Assembly amended the Code by removing subsection B of § 18.2-346 and adding § 18.2-346.01 containing the substance of former Code § 18.2-346(B).

*Commonwealth*, 57 Va. App. 197, 202 (2010) (quoting *Fine v. Commonwealth*, 31 Va. App. 636, 640 (2000)), *aff'd*, 282 Va. 344 (2011).

B.  *Sufficient Evidence of a Substantial Act in Furtherance of an Offer of Money for Sex*

When Thornton offered money in exchange for sex in November 2020, Code § 18.2-346 provided:

> A. Any person who, for money or its equivalent, (i) commits any act in violation of § 18.2-361; performs cunnilingus, fellatio, or anilingus upon or by another person; engages in sexual intercourse or anal intercourse; touches the unclothed genitals or anus of another person with the intent to sexually arouse or gratify; or allows another to touch his unclothed genitals or anus with the intent to sexually arouse or gratify or (ii) offers to commit any act in violation of § 18.2-361; perform cunnilingus, fellatio, or anilingus upon or by another person; engage in sexual intercourse or anal intercourse; touch the unclothed genitals or anus of another person with the intent to sexually arouse or gratify; or allow another to touch his unclothed genitals or anus with the intent to sexually arouse or gratify and thereafter does any substantial act in furtherance thereof is guilty of prostitution, which is punishable as a Class 1 misdemeanor.
>
> B. Any person who offers money or its equivalent to another for the purpose of engaging in sexual acts as enumerated in subsection A and thereafter does any substantial act in furtherance thereof is guilty of solicitation of prostitution, which is punishable as a Class 1 misdemeanor.  However, any person who solicits prostitution from a minor (i) 16 years of age or older is guilty of a Class 6 felony or (ii) younger than 16 years of age is guilty of a Class 5 felony.

2020 Va. Acts ch. 595.

Thornton contends that the trial court erred in finding that he completed a substantial act in furtherance of his offer of money for sex, as required under former Code § 18.2-346(B). Consideration of Thornton's argument requires us to construe the statutory phrase "substantial act in furtherance thereof."  In construing a statute, this Court's objective is "to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the

legislature." *Colbert v. Commonwealth*, 47 Va. App. 390, 394 (2006) (quoting *Jones v. Rhea*, 130 Va. 345, 372 (1921)). "[T]he general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007) (quoting *Hubbard v. Henrico Ltd. P'ship*, 255 Va. 335, 340 (1998)). Accordingly, "words are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise." *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008). "[W]hile legislative intent 'must be gathered from the words used, . . . unreasonable or absurd results must not be reached by too strict adherence to literal interpretation.'" *Colbert*, 47 Va. App. at 395 (second alteration in original) (quoting *Buzzard v. Commonwealth*, 134 Va. 641, 653 (1922)).

The ordinary meaning of the word "substantial" is "something of moment: an important or material matter, thing, or part." *Desai v. A. R. Design Grp., Inc.*, 293 Va. 426, 435 (2017) (quoting *Webster's Third New International Dictionary* 2280 (1993)). The plain, ordinary meaning of the statutory term "furtherance" is "[t]he act of furthering, advancing, or helping forward." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) (alteration in original) (quoting *Webster's II New College Dictionary* 454 (1999)). Thus, an act constitutes a "substantial act in furtherance" of an offer for prostitution only if it plays a significant or important role in furthering or advancing the commission of the proposed sexual transaction. In requiring proof of a substantial act in furtherance of an offer for prostitution, the General Assembly evinced its intent to require evidence of post-offer conduct that is strongly corroborative of a defendant's intent to complete the proposed sexual transaction.

We hold that an act plays a significant role in furthering or advancing an offer for prostitution—and constitutes a substantial act in furtherance thereof—when the act is more than mere preparation and is strongly corroborative of a defendant's intent to complete the proposed sexual transaction. Whether an act is a substantial act in furtherance of an offer for prostitution

is a question to be determined by the trier of fact upon consideration of the totality of the specific facts and circumstances of each case.

We further hold that the trial court's finding that Thornton committed a substantial act in furtherance of his offer for prostitution is supported by the evidence and not plainly wrong. After Thornton arranged to meet "Emma" to exchange money for sex, he prepared for the meeting by equipping himself with condoms, obtaining marijuana and cigarettes to get a discounted price, buying the beer that "Emma" couldn't buy for herself, and carrying over $160 in cash to pay for the sexual encounter. Then Thornton drove for about 25 minutes to the arranged meeting place and arrived at the agreed time. Upon his arrival, Thornton notified "Emma" by text message: "Here." A rational fact-finder could find that Thornton's 25-minute drive to "Emma's" address carrying the condoms, marijuana, cigarettes, beer, and cash went beyond mere preparation and was strongly corroborative of an intent to complete the proposed sexual transaction. Therefore, considering the totality of the facts and circumstances, a rational fact-finder could conclude that Thornton's drive to the arranged meeting place was a substantial act in furtherance of his offer of money for sex.

Thornton argues that he committed no act in furtherance of his offer for prostitution because he did not give anyone money and he did not engage in sexual touching with anyone. Thornton contends that his conduct was no more than preparation. We disagree. Although evidence of an exchange of money or of sexual touching may be sufficient to prove the requisite substantial act in furtherance of an offer for prostitution, such conduct is not necessary. *See Bakran*, 57 Va. App. at 204 (defendant "committed substantial acts in furtherance of prostitution" by engaging in physical sexual touching with undercover officer). A rational fact-finder could find that the only plausible explanation for Thornton's act of driving for miles to "Emma's" address with condoms and cash was to complete the proposed sexual transaction.

A rational fact-finder could also find that if "Emma" had not been a decoy in a sting operation, Thornton would have been dangerously close to paying for and having sex with a minor when he parked at the arranged meeting place and notified "Emma" of his arrival. Thus, the evidence supports a finding that Thornton's drive to the arranged meeting place went beyond mere preparation and was strongly corroborative of an intent to complete the proposed sexual transaction. Therefore, the evidence supports a finding that Thornton's drive to the arranged meeting place was a substantial act in furtherance of his offer for prostitution.

C. *Sufficient Evidence that Thornton Solicited Prostitution from a Minor*

Thornton contends that the trial court erred in finding that he solicited prostitution from a minor because his only communications about exchanging money for sex occurred when "Emma" claimed to be a 19-year-old adult. Thornton argues that since there was no offer to exchange money for sex after "Emma" texted that she was "almost 18," the evidence failed to prove that he solicited prostitution from a minor.[3] We disagree. A rational fact-finder could find that Thornton was engaged in an ongoing negotiation about the terms of the proposed prostitution until he and "Emma" agreed upon a place and time for the sexual transaction. After "Emma" claimed that she was a minor, Thornton replied, "I don't do under 18." Seconds later, "Emma" texted that she would keep their sexual transaction "just between us." At that point, there was no expressed agreement to engage in sexual activity for money. Five minutes later, "Emma" texted that she was free and asked whether Thornton was coming. Then Thornton agreed anew to meet with "Emma" and "check [her] out." Subsequently, "Emma" required Thornton to affirm that he was really coming before she would provide her address. Thornton replied, "I am coming." Then "Emma" inquired whether Thornton wanted to have sex without

---

[3] Thornton does not argue that the evidence is insufficient to prove that he solicited prostitution from a minor because his communications about exchanging money for sex were with an adult detective, not a minor. Therefore, this opinion does not address this issue.

using a condom—one of "Emma's" advertised services. Thornton replied that he would bring condoms. Then "Emma" provided her address, and they agreed to meet around 5:30 p.m. Because a rational fact-finder could find that (i) Thornton agreed anew to meet for paid sex after "Emma" texted that she was a minor and (ii) thereafter Thornton did a substantial act in furtherance of the offer for prostitution, the trial court did not err in finding that Thornton solicited prostitution from a minor.

## CONCLUSION

The evidence is sufficient to support the trial court's findings that Thornton committed a substantial act in furtherance of an offer for prostitution and that Thornton solicited prostitution from a minor.[4] Therefore, this Court affirms Thornton's conviction.

*Affirmed*.

---

[4] The trial court's conviction order entered September 7, 2021, and sentencing order entered March 31, 2022, record the offense of conviction as "Solicit Prostitution From a Minor," omitting that the minor's age was 16 or older. At the conclusion of Thornton's trial, the trial court pronounced that Thornton was guilty as charged of solicitation of prostitution from a minor, *age 16 or older*, in violation of Code § 18.2-346. R. 194. Thus, the trial court convicted Thornton of a Class 6 felony, not a Class 5 felony. *See* 2020 Va. Acts ch. 595 (former Code § 18.2-346(B)) ("any person who solicits prostitution from a minor (i) 16 years of age or older is guilty of a Class 6 felony or (ii) younger than 16 years of age is guilty of a Class 5 felony").

Pursuant to Code § 8.01-428, "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order." Code § 8.01-428(B).